1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TERADATA CORPORATION, TERADATA US, INC., and TERADATA OPERATIONS, INC.

                              Plaintiffs,

        v.

SAP SE, SAP AMERICA, INC., and SAP LABS, LLC,

                              Defendants.

MISC NO. _____ 2:20-mc-0074 RSM

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM MICROSOFT CORPORATION**

**NOTE FOR MOTION CALENDAR:**
**September 11, 2020**

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM MICROSOFT CORPORATION

MISC. NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Pursuant to Rules 37 and 45 of the Federal Rules of Civil Procure and Local Rule 37(a)(1) of the Western District of Washington, Teradata Corporation ("Teradata") moves to compel Microsoft Corporation ("Microsoft") to produce documents responsive to Requests for Production Nos. 1-5, 7, and 9 of Teradata's Subpoena to Produce Documents, Information, Or Objects or to Permit Inspection of Premises in a Civil Action to Microsoft Corporation.

## I.     INTRODUCTION

On May 22, 2020, Teradata served Microsoft with a subpoena requesting 11 categories of documents needed for Teradata's antirust claims against SAP SE, SAP America, Inc., and SAP Labs, LLC (collectively, "SAP").  (*See* **Exhibit 1**.)[1]  After three months of negotiations, Microsoft has outright refused to produce any documents at all for many of the requests and refused to commit to producing documents for the other requests at issue.  Microsoft's only production to date was a mere 22 pages of nonresponsive, publicly-available, decades-old press releases. Teradata has patiently tried to resolve this with Microsoft, but time is running out.

SAP has engaged in anticompetitive conduct to stifle competition from Teradata and gain a monopoly position with respect to certain data analytics software both companies sell.  SAP claims that it is not, and could not become, a monopolist because of competition from Microsoft and other suppliers of the products underlying Teradata's antitrust claims.  Teradata needs certain limited information from Microsoft to show that, while Microsoft obviously is a leading supplier for a variety of products, it is not a major competitor in the relevant antitrust market SAP seeks to monopolize.

With this motion, Teradata seeks to compel production of documents responsive to only seven document requests, as narrowed by Teradata during negotiations to try to reach agreement. Those requests seek specific promotional and marketing plans; competitive assessments regarding specific potential competitors; certain information about specific Microsoft customers; and certain

---

[1] Teradata is not currently moving on Request Nos. 10 and 11 since Microsoft has agreed to comply with those requests.  Teradata also is not currently moving on Request Nos. 6 and 8.

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM
MICROSOFT CORPORATION - 1

MISC. NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

documents, including communications with customers and internal to Microsoft, regarding

specific anticompetitive licensing practices SAP has adopted and that are at the core of Teradata's

antitrust claims against SAP.  These categories of documents are routinely provided in discovery

in antitrust cases, including from nonparties, and Teradata cannot obtain them from other sources.

As Dr. Kostis Hatzitaskos explains, the documents are needed for important economic analyses

routinely performed in antitrust cases.[2]

Again, after three months of negotiations, Microsoft has provided no indication of what, if

anything, it is willing to produce for the requests at issue, while refusing to produce anything for

most of the requests.  Microsoft has responded with boilerplate objections and incredible,

unsubstantiated burden claims—such as claiming that, as a leading technology company, it has no

ability to conduct electronic searches internally of employees' email and electronic files.

Microsoft should be required to produce responsive documents immediately.

## II.    BACKGROUND

### A.  The Teradata-SAP Litigation

Teradata is the plaintiff and counter-defendant in a lawsuit pending against SAP in the

Northern District of California.  Teradata is pursuing claims for trade secret misappropriation and

antitrust violations, as explained below.  **Exhibit 2.**  The documents Teradata seeks here are

relevant to its antitrust claims against SAP.

### B.  The Relevant Teradata and SAP Products

#### i.  ERP Applications

SAP sells Enterprise Resource Planning ("ERP") Applications, which are business

management software solutions that capture a variety of data, such as transactions, raw materials,

production capacity, purchase orders, payroll, and customer relationships.  Very few providers

offer integrated suites of ERP Applications that can meet the needs of large enterprise customers,

---

[2] This motion is supported by the Declaration of Kostis Hatzitaskos (hereinafter "Hatzitaskos Decl.").

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM
MICROSOFT CORPORATION - 2
MISC. NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    because of the need to scale efficiently and handle the volume, diversity, and complexity of

2    information produced and collected by those customers.  **Exhibit 2**, ¶¶ 59-70.  SAP has a

3    dominant position among these few providers with its S/4HANA suite and legacy ERP

4    Applications.  **Exhibit 2**, ¶ 70.  Switching between ERP providers is difficult, expensive, and

5    risky, creating a "lock-in" effect that reinforces SAP's dominance.  **Exhibit 2**, ¶¶ 65-69.

6        ERP Applications are connected to underlying databases that hold the data collected and

7    created by the applications.  These "transactional" databases are designed to efficiently and

8    accurately collect and store information in real time in an organized fashion.  They are

9    traditionally not designed to perform analytics, as doing so can lead to disruptions and

10   inefficiencies in their transactional functions.  Instead, data from transactional databases have

11   traditionally been replicated and transferred to specialized analytic databases.  **Exhibit 2**, ¶ 72.

12                     ii.   **EDAW Products**

13       Teradata provides enterprise data analytics and warehousing products ("EDAW

14   Products").  Analytic databases range in size and capability, from "data marts" that are designed

15   for a single business function, to EDAW Products designed for a wide range of disparate

16   information.  EDAW Products are particularly important for large enterprises that collect a

17   substantial amount of diverse information from sources such as ERP Applications.  These

18   companies rely on EDAW Products to efficiently harmonize, organize, store, and ultimately

19   retrieve information that may be in different formats, languages, or currencies, or highly technical

20   in nature.  **Exhibit 2**, ¶ 75.  These enterprises also often have very large volumes of data that

21   require EDAW Products to scale effectively.  Only a few companies have the ability to provide

22   EDAW Products that can handle the complexity and scale required for large enterprises.  Teradata

23   historically was a leading and innovative company in the EDAW Product market—but it has come

24   under attack from SAP, which has engaged in anticompetitive conduct.

25       **C.  SAP's Anticompetitive Conduct**

26       Teradata's claims arise from SAP's efforts in recent years to use its dominant position in

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM
MICROSOFT CORPORATION - 3
MISC. NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

the ERP Applications market to pursue a similarly dominant position in the EDAW Product market, in which it previously had no presence.  In 2008, SAP, under what Teradata now knows to be false pretenses, entered into a joint venture to combine SAP's ERP Applications suite and Business Warehouse reporting tool (SAP BW) with Teradata's industry-leading EDAW products. In fact, this was a ruse for SAP to steal Teradata's trade secrets and use them to develop a competing product:  SAP HANA.

Customers have traditionally mixed and matched EDAW Products with ERP Applications according to what best suited their needs—similar to using non-Microsoft software products with its Windows operating system.  **Exhibit 2**, ¶¶ 80-81.  Teradata's success as a leading EDAW supplier has depended on this freedom of choice in the marketplace.  SAP has attacked that freedom.  **Exhibit 2**, ¶ 83.

SAP's first iteration of HANA had little success in the EDAW market.  Low adoption rates and customer complaints highlighted HANA's deficiencies.  **Exhibit 2**, ¶¶ 86-87.  Unable to compete on the merits, SAP began coercing customers into using HANA, to the exclusion of Teradata and other third-party EDAW Products, by forcing ERP customers to adopt HANA in exchange for purchasing or merely upgrading SAP's ERP Applications—thus tying two distinct products together.  **Exhibit 2**, ¶¶ 89-91.  SAP announced that it will no longer upgrade previous ERP Applications and will sunset maintenance for previous iterations, thereby forcing its ERP customers to upgrade to S/4HANA and thus buy HANA.  **Exhibit 2**, ¶ 93.

SAP also has begun significantly restricting competitors' ability to access customers' own data in SAP ERP Applications.  This makes it costly, inefficient, or impossible for customers to move or replicate this data to a third-party database, such as Teradata, without breaching its license with SAP—something they previously had freedom to do with their own data. **Exhibit 2**, ¶¶ 90, 95-98.  Instead, SAP requires customers to upgrade to a much more expensive version of HANA before allowing for efficient access.  The combination of tying HANA to S/4HANA and implementing these restrictions makes it cost prohibitive to use a third-party EDAW Product.

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM
MICROSOFT CORPORATION - 4

MISC. NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Through this conduct, SAP has deliberately sought to exploit its large, existing ERP

2    customer base to the detriment of those and other customers, by stifling competition from

3    Teradata.  Because SAP's ERP customers are effectively locked into using its ERP Applications,

4    SAP is now attempting to leverage that substantial market power to lock them into using only

5    HANA in the EDAW Product market.

6         D.  **Microsoft's Role in the Relevant Markets**

7         Microsoft provides both ERP Applications and EDAW Products.  Its ERP Applications

8    consist of a suite of products under the Microsoft Dynamics brand.  Microsoft touts that it has "a

9    large in house consulting team with over 400 years of experienced ERP Implementations."  *See*

10   https://abouttmc.com/erp-system/.  SAP claims that Microsoft competes with SAP for ERP

11   customers.  **Exhibit 3** at 13.

12        Microsoft also offers EDAW Products, most prominently Microsoft SQL Server and

13   Microsoft Azure SQL Data Warehouse.  Its EDAW Products often draw data from SAP ERP

14   Applications, meaning Microsoft is directly affected by SAP's conduct.  SAP contends that

15   Microsoft's EDAW Products compete with SAP's HANA and Teradata's EDAW Products.

16   **Exhibit 4** at 4.

17   **III.  LEGAL STANDARD**

18        "[D]iscovery in antitrust litigation is most broadly permitted and the burden or cost of

19   providing the information sought is less weighty a consideration than in other cases."  *New Park*

20   *Entertainment L.L.C. v. Electric Factory Concerts, Inc.*, 2000 WL 62315, at *4 (E.D. Pa. January

21   13, 2000) (quoting *United States v. Int'l Bus. Mach. Corp.*, 66 F.R.D. 186, 189 (S.D.N.Y.1974)).

22   *See also In re Aspartame Antitrust Litigation*, 2008 WL 2275531 (E.D. Pa. May 12, 2008) (noting

23   that the "broad scope of discovery 'has been held to be particularly appropriate in antitrust

24   cases.'") (quoting *In re Intel Corp. Microprocessor Antitrust Litig.*, 2007 WL 137152 at *5 (D.

25   Del. Jan 12, 2007)).  Rule 45 subpoenas "may obtain discovery regarding any nonprivileged

26   matter that is relevant to any party's claim or defense and proportional to the needs of the case."

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM
MICROSOFT CORPORATION - 5
MISC. NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

*Robertson v. Catholic Cmty. Servs. of W. Wash.*, 2020 WL 3433143 (W.D. Wa. June 23, 2020) (applying Fed. R. Civ. P. 26(b)(1) standards to Rule 45 subpoenas).

Objections to discovery requests "must be specific—not []generalized, boilerplate objection[s]." *Jones v. Hernandez*, 322 F.R.D. 411, 413 (S.D. Cal. 2017) (citing *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for the Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005)). *See also Brown v. Warner*, 2015 WL 630926, at *6 (W.D. Wash. Feb. 12, 2015) (quoting *Cable & Computer Tech., Inc. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997)) (compelling production for failure to show that request was "overbroad or unduly burdensome"). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Id.* at *1. *See also Opico v. Convergent Outsourcing, Inc.*, 2019 WL 3067202 at * 2 (W.D. Wash. Jul. 12, 2019).

## IV.   ARGUMENT

### A.  Request Nos. 1-2 (Promotional and Marketing Plans)

These requests seek promotional materials and marketing plans[3] identifying whom Microsoft deems to be competitors in the relevant markets for ERP and EDAW products and how it positions its products against its primary competitors.  Such documents are needed to define the relevant markets here and to assess market power.  *See Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, No. 3:12-cv-26, 2013 WL 3872077, at *6 (S.D. Ohio July 25, 2013) (finding that "surveys, analyses, or studies…regarding competition" to be relevant to antitrust claims and ordering their production under Rule 45).  *See also Todd v. Exxon Corp.*, 275 F.3d 191, 205 (2d Cir. 2001) ("Industry recognition is well established as a factor courts consider in defining a market.")  The U.S. Department of Justice, Antitrust Division's model discovery requests for

---

[3] In discussions with Microsoft, Teradata agreed to limit this request by agreeing not to request product roadmaps or product development plans.  See the Declaration of David Cross in support of this motion (hereinafter "Cross Decl."), ¶ 4.

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM
MICROSOFT CORPORATION - 6
MISC. NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1 antitrust cases seek these same documents.  *See* DOJ Model Requests, Nos. 11 and 17, available at
2 https://www.justice.gov/atr/file/706636/download.

3 　　　Microsoft has important information about the relevant markets that is not available from
4 Teradata's own files, SAP, or public sources.  **Hatzitaskos Decl.**, ¶ 5.  SAP claims the relevant
5 markets include many competing products, including Microsoft's products, such that SAP cannot
6 possess monopoly power or pose a dangerous probability of obtaining monopoly power in either
7 market.  Microsoft's assessments of competition, including of its own competitive position,
8 regarding the relevant products are needed to respond to SAP's defense.  For example, Microsoft's
9 competitive assessments may identify only a small set of products that pose significant
10 competition for its own ERP and EDAW products.  Similarly, its documents may show that
11 certain customers demand specific product offerings that only a limited set of competitors can
12 provide.  Economists routinely rely on such information for market definition and assessments of
13 market power.  **Hatzitaskos Decl.**, ¶ 5.  And again, so does the Department of Justice.

14 　　　Microsoft claims that Teradata is attempting to "shift the burden of conducting its own
15 market analysis" to Microsoft.  **Exhibit 5** at 4-5.  Not so.  Teradata has not asked Microsoft to
16 perform any analysis; it seeks only a limited set of documents prepared in the ordinary course of
17 Microsoft's business already sitting in its files.

18 　　　Microsoft also objected to these requests with boilerplate and other meritless objections,
19 such as claiming that it does not understand what "promotional materials" and "competitive
20 assessment or evaluation" mean.  **Exhibit 5** at 3-4.  Microsoft's burden objection fares no better,
21 completely lacking any specification or substantiation.

22 　　　**B.  Request Nos. 3-4 (Competitive Assessments and Specific Customer Information)**

23 　　　Request No. 3 seeks documents showing how Microsoft has performed in competition with
24 a limited set of potential ERP and EDAW competitors.  Request No. 4 seeks limited information
25 regarding Microsoft's top 100 ERP and EDAW customers by revenue, such as the product
26 versions those customers are using.  These requests seek important information on how customers

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM
MICROSOFT CORPORATION - 7
MISC. NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

choose among potential key competitors in the relevant markets.  *See Amer Needle Inc. v. New Orleans*, No. 04 C 7806, 2012 WL 4327610, at *1 (N.D. Ill. Sept. 21, 2012) (granting motion to compel third party's license agreements and royalty and sales data as relevant to market definition and market power for antitrust case).  Understanding whether and how customers switch between potential competitors, including Microsoft, is necessary to assess the extent to which ERP customers are locked in with their suppliers and view products as substitutes for one another.  **Hatzitaskos Decl.,** ¶ 5.

Request No. 4 also seeks information necessary to calculate market shares, which courts regularly consider for evaluating market power in antitrust cases.  *See*, e.g., *Kerwin v. Cage Fury Fighting Championships*, Civ. No. 14-5159, 2015 WL 5092976, at *1 (E.D. Pa. Aug. 28, 2015) ("Requests calculated to discover agreements, restrictions on competition, defendants' market share, and the essential nature of casinos in the market are within the scope of discovery.").  Courts have compelled non-parties to produce such information—and much more—in antitrust cases.  *See*, e.g., *In re Androgel Antitrust Litig. (II) v. Unimed Pharms., LLC*, 2012 WL 12895205 (N.D. Ga. Mar. 29, 2012) (compelling non-parties to produce "all purchase and sales data," "comparative analyses," and contracts with major customers).

Microsoft responded to these requests with similar boilerplate and other meritless objections, such as claiming it does not know what "wins and losses of sales" are or what it means that customers "switched away" from one supplier to another.  Microsoft also claims that Request No. 3 asks it to "create documents that do not otherwise exist" in an attempt to "disguise an interrogatory as a request for production."  **Exhibit 5** at 6.  Again, however, Teradata seeks only existing documents—specifically, those reflecting Microsoft's wins and losses, including "the product and supplier the customer switched away from and identification of the product and supplier it switched to."  Microsoft does not claim—nor could it—that no documents exist reflecting the requested information.

Microsoft also objects to these requests as seeking "discovery of matters that can be obtained more conveniently…e.g., from publicly available sources or parties in this lawsuit." **Exhibit 5** at 6, 8.  This objection ignores the substance of the requests, which seek certain nonpublic information about Microsoft's customers and its own sales to them, including wins and losses of sales of the relevant products.  Even if there is some overlap between publicly-available information and what Microsoft has in its own files (which Microsoft claims without support), this does not relieve Microsoft of producing the nonpublic documents that Teradata needs.  Courts have recognized that, "[p]ractically, there is no way for the plaintiff to frame its request to eliminate the possibility of duplication and at the same time ensure that it receives all of the documents it seeks from third parties."  *New Park Entertainment L.L.C. v. Electric Factory Concerts, Inc.*, 2000 WL 62315, at *4 (E.D. PA. January 13, 2000).  Teradata has narrowly framed its requests and seeks documents that are unavailable from other sources.

Finally, Microsoft objects to these requests as "over broad and unduly burdensome" and "call[ing] for electronically stored information from sources that are not reasonably accessible." **Exhibit 5** at 6-8.  Again, Microsoft has provided no facts or specifics of any kind to support these sweeping, boilerplate objections.  Nor do the objections seem to hold merit on their face given the ease with which sophisticated companies like Microsoft typically can collect and produce responsive information from central databases that track such information.  *See Crocs, Inc. v. Effervescent, Inc.*, 2017 WL 3888502, at *3 (D. Colo. Feb. 8, 2017) ("[t]he Federal Rules clearly require the production of information from dynamic databases").  *See also Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 656 (D. Kan. 2006) (ordering production of contents of databases).  In fact, Microsoft sells several tools that companies use to track this very information, such as Microsoft Excel, Microsoft Access, and Microsoft Dynamics applications.  Microsoft does not deny that it likewise tracks the requested information internally.

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM MICROSOFT CORPORATION - 9

MISC. NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

**C.  Request Nos. 5, 7, and 9**

2   These requests seek documents concerning the anticompetitive conduct at the center of

3   Teradata's claims:  the restrictions SAP implements through its S/4HANA and HANA licensing

4   practices.  These restrictions unlawfully limit consumer choice by restricting the ability of SAP

5   customers to transfer their own data between ERP Applications and EDAW Products.  Microsoft

6   has outright refused to produce any documents responsive to these requests, insisting that Teradata

7   rely on documents available from SAP.  **Exhibit 6**.  But SAP obviously does not have Microsoft's

8   own internal documents or customer communications.

9   Request No. 5 seeks documents related to communications between Microsoft and SAP

10  regarding these license restrictions.[4]  Teradata of course is obtaining what it can from SAP.  But

11  this request includes Microsoft's own internal communications concerning SAP's anticompetitive

12  licensing restrictions, which again are not available from SAP.  Such communications are likely to

13  contain Microsoft's internal assessments of the impact of SAP's licensing restrictions on

14  Microsoft and its customers.  SAP claims its products are innovative and that its licensing

15  restrictions do not affect the competitive process.  Microsoft's documents likely will refute that

16  claim given the harm SAP has caused in the marketplace already.  Moreover, given the narrow,

17  specific subject matter, these documents are unlikely to be voluminous or difficult to search for

18  and produce.  Teradata has suggested three key custodians who are likely to have responsive

19  documents and identified a group of specific products to focus on, thereby significantly reducing

20  any burden on Microsoft.  **Exhibit 7,** July 3, 2020 email from Mary Kaiser to Ben Byer; July 13,

21  2020, email from Mary Kaiser to Ben Byer.

22  Request No. 9 seeks documents recognizing restrictions SAP places on exporting data

23  from SAP ERP Applications to Microsoft products.  This complements Request No. 5 by

24

25  ──────────────
[4] As part of a global resolution across the requests at issue, Teradata agreed to narrow this request to forgo documents
    generally about SAP's HANA or S/4 HANA products and limit it to documents about SAP's licensing restrictions and

26  a specific subset of products.

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM
MICROSOFT CORPORATION - 10
MISC. NO. ___

1    capturing other internal Microsoft documents recognizing the impact of SAP's licensing

2    restrictions on Microsoft and its customers.  SAP obviously does not have these documents.

3            Request No. 7 seeks documents concerning communications with other competitors,

4    customers, and any government authority regarding SAP's licensing restrictions on S/4HANA and

5    HANA.  This includes, for example, customer complaints that only Microsoft has.  These

6    documents are relevant to demonstrate SAP's harm to competition, which is a key consideration in

7    Teradata's case against SAP.  *See Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*,

8    No. 3:12-cv-26, 2013 WL 3872077, at *5 (S.D. Ohio July 25, 2013) (finding a nonparty

9    competitor's information relevant to the "marketwide impact of the challenged conduct on

10   competition" in antitrust case and ordering production of communications with others).  *See also*

11   **Hatzitaskos Decl.**, ¶ 5.

12           Microsoft asserted the same boilerplate, unsupported objections of overbreadth, ambiguity,

13   and burden.  **Exhibit 5** at 8-9, 11-12, 14-15.   Teradata's requests are specifically targeted at a

14   single topic at the core of its antitrust claims and SAP's anticompetitive conduct:  specific SAP

15   licensing restrictions.  Microsoft also again purports not to understand common terms such as

16   "changes to…business practices," "business relationship," "any customer," "any competitor," and

17   the "interoperability or the integration" of the relevant products.  It simply is not credible that

18   Microsoft does not understand what a customer or competitor is, including in the context of

19   antitrust litigation, with which it has extensive experience.  Moreover, terms such as

20   "interoperability" and "integration" are common in the context of the ERP Application and

21   EDAW Products at issue, as they refer to the ability to transfer data from ERP Applications to

22   EDAW Products.  Teradata's request uses theses terms in the specific context of SAP's licensing

23   restrictions, with which Microsoft is very familiar through its own business relationship and

24   interactions with SAP.

25

26

## CERTIFICATION

Pursuant to L.R. 37(a)(1), the undersigned certifies that counsel for Teradata has in good faith conferred with counsel for Microsoft in attempts to resolve any disputes concerning the scope of the requests for production.  Teradata has spoken or offered to speak to Microsoft's counsel on several occasions to come to an agreement on the scope of discovery, but the parties have been unable to reach an agreement. **Cross Decl.**  Because the parties' efforts to resolve these issues have been unavailing, Teradata now seek intervention by the Court

DATED this 27th day of August, 2020.

Respectfully submitted,

SUMMIT LAW GROUP, PLLC

By *s/Diana Siri Breaux*
    Diana Siri Breaux, WSBA #46112
    315 Fifth Avenue S., Suite 1000
    Seattle, WA 98104
    Tel: (206) 676-7000
    Fax: (206) 676-7001
    *dianab@summitlaw.com*

MORRISON & FOERSTER LLP

By *s/David D. Cross*
    David D. Cross (*Pro Hac Vice* Pending)
    2000 Pennsylvania Avenue NW, Suite 6000
    Washington, DC 2006-1888
    Tel: (202) 887-8795
    dcross@mofo.com

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM
MICROSOFT CORPORATION - 12

MISC. NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001