1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TERADATA CORPORATION, TERADATA US, INC., and TERADATA OPERATIONS, INC. | MISC NO. 2:20-mc-0074 RSM |
| Plaintiffs, | **DECLARATION OF KOSTIS HATZITASKOS IN SUPPORT OF TERADATA'S MOTION TO COMPEL DISCOVERY FROM MICROSOFT** |
| v. | |
| SAP SE, SAP AMERICA, INC., and SAP LABS, LLC, | |
| Defendants. | |

I, Kostis Hatzitaskos, do hereby declare as follows:

1.      I am a Vice President and co-head of the antitrust and competition practice at Cornerstone Research.  I have been retained as an economic consultant by counsel for Teradata Corporation ("Teradata") in the above-captioned matter.  I make this declaration based on personal knowledge.  If called upon as a witness, I could and would testify competently to the matters set forth herein.

2.      I have a Ph.D. in Economics from the University of California, Berkeley, and I have expertise in applied microeconomics.  I have consulted from an economic perspective on a range of antitrust matters.  I have coauthored multiple publications on economic methods in antitrust and competition matters, including chapters in reference books and handbooks published

DECLARATION OF KOSTIS HATZITASKOS IN SUPPORT OF TERADATA'S MOTION TO COMPEL DISCOVERY FROM MICROSOFT -1
MISC NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

by the ABA Section of Antitrust Law, and I am a member of the editorial board of the ABA's *Antitrust Source*.

3.      I have been asked by counsel for Teradata to opine on certain issues relevant to the antitrust claims raised in the above-captioned case against SAP SE, SAP America, Inc., and SAP Labs, LLC ("SAP").

4.      As explained below, the information requested by Teradata's subpoena to third party, Microsoft Corporation ("Microsoft") ("Requests") is highly relevant to economic analyses of Teradata's claims and, in my experience, customary for non-party discovery in antitrust cases. The information requested of Microsoft is needed for my colleagues and me to conduct economic analysis of factors relevant to the underlying case.  Standard economic analyses in antitrust cases include the determination of relevant antitrust markets, the market power (if any) held by each competitor in these markets, and the state of competition in the markets (including whether SAP has substantial market power and the potential for injury to competition and Teradata from the challenged SAP conduct).

5.      Specifically, the Requests are relevant to Teradata's antitrust claims against SAP for at least the reasons outlined below.

Request 1:

Request No. 1 seeks "Documents comprising or reflecting Your product roadmaps, promotional materials, product development plans, and marketing plans for each of the ERP Applications or EDAW Products and related services that You offer."  I understand Teradata has narrowed this request to exclude product roadmaps and development plans, notwithstanding that such information is highly relevant and, in my experience, customary in discovery in such cases.  The requested promotional materials and marketing plans are relevant to (among other issues) market definition and market power.  They provide such valuable information as the customers to which a firm, or group of firms, targets products; the competitors the firm, or group of firms, sells against; how firms compete against each

DECLARATION OF KOSTIS HATZITASKOS IN SUPPORT
OF TERADATA'S MOTION TO COMPEL DISCOVERY
FROM MICROSOFT -2

MISC NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

other; and what features of product offerings are important to competition.  This is relevant to an analysis of the extent and effect of SAP's market power, including any harm to competition and Teradata.

Request 2:

Request No. 2 seeks "Documents reflecting or concerning any assessment or evaluation of competition between or among Microsoft, Oracle, IBM, Teradata, and SAP for ERP Applications and/or EDAW Products and all data underlying or evaluated in such assessments or evaluations."  This category of documents is also relevant to (among other issues) market definition and market power.  These documents indicate the firms that Microsoft considers the primary competitors in both the ERP Applications market and the EDAW Products market, the strength (or weakness) of this competition, and the customers those competitors target.  Again, this is relevant to an analysis of the extent and effect of SAP's market power, including any harm to competition and Teradata.

Request 3:

Request No. 3 seeks "Documents reflecting Microsoft's wins and losses of sales of ERP Applications and EDAW Products in competition with Oracle, IBM, Teradata, or SAP, including for each win and loss an identification of the product and supplier the customer switched away from and identification of the product and supplier it switched to."  Win-loss records of customers indicate the primary products that customers targeted by competing firms consider substitutable for one another, which is relevant for determining market definition and assessing market power.  A competitor's own analysis of the outcomes of efforts to compete for customers is relevant to understanding the factors that drive competition in the market and that influence customers' choices of competing products.  In my experience, sophisticated firms such as Microsoft often track the requested win-loss data in electronic databases from which the data can readily be collected and produced.

DECLARATION OF KOSTIS HATZITASKOS IN SUPPORT
OF TERADATA'S MOTION TO COMPEL DISCOVERY
FROM MICROSOFT -3
MISC NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Request 4:

Request No. 4 seeks "Documents sufficient to identify Your top 100 customers by revenue for each of the ERP- and EDAW-based products or services You offer, the specific Microsoft ERP- or EDAW-based products or services that each such customer purchases, the amounts paid annually by each such customer for each of those ERP- or EDAW-based products or services, and when each such customer began using and stopped using (for any that stopped) each of those ERP- or EDAW-based products or services." Identities of customers of all major firms in a purported relevant market enable standard economic analyses such as calculating switching rates, diversion ratios, and market shares among particular sets of customers.[1]  They also are helpful in determining which products customers find substitutable, and thus are relevant to defining relevant markets and assessing market power.

Although ideally we would obtain information about all Microsoft's ERP and EDAW customers, I understand that this request is limited only to the top 100 customers to minimize any burden on Microsoft while still obtaining the requisite information about the most significant customers from a revenue standpoint.  The amount paid by each customer is needed to determine the economic significance of each customer and the extent to which each customer purchases relevant products from each competing firm.  For example, the 100th customer in Microsoft's top 100 customers could be SAP's biggest ERP customer by revenue, or it could be a relatively small customer for SAP.  It also could be purchasing distinct ERP products with different features from Microsoft and SAP, which is why we need to know what specific products each customer is buying from Microsoft.  Knowing when each customer started and stopped buying relevant products from Microsoft is

---

[1] Switching rates and diversion ratios are common metrics used in considering market definition and the degree of competition between different firms.  *See*, e.g., U.S. Dep't of Justice & Fed. Trade Comm'n, Horizontal Merger Guidelines (2010).

DECLARATION OF KOSTIS HATZITASKOS IN SUPPORT
OF TERADATA'S MOTION TO COMPEL DISCOVERY
FROM MICROSOFT -4

MISC NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

relevant to the analysis.  A customer that started buying EDAW products from SAP only after ending its EDAW purchases with Microsoft indicates something quite different economically from a customer buying EDAW products from both SAP and Microsoft at the same time—and what the latter customer indicates economically, again, depends on what exactly it is buying from each firm and in what volumes.  A customer that buys equally from both SAP and Microsoft indicates something different economically from one meeting virtually all its needs with SAP products while making only relatively small purchases from Microsoft.  This type of comparative analysis of each firm's customers is relevant for determining the degree to which customers consider certain products (across providers) substitutable, among other important economic considerations which ultimately inform market definition and market power assessments.  This comparative analysis cannot be done without the requested data from Microsoft since it would omit analysis of a potential key competitor in each of the two relevant markets here.

Furthermore, the requested sales data is relevant to (among other issues) market definition, market power, and injury to competition.  Data on transactional sales enable determination of market shares based on revenue, a common method of market share calculation.  By examining revenue across potential key competitors in a relevant antitrust market, we can estimate the total market size in terms of revenue and calculate each such firm's relative share of that market, which again is a standard economic approach for examining market power.  Such analysis obviously cannot be done for those potential key competitors for which the requested revenue data is not available, and we have not to date found the requested revenue data for Microsoft from publicly available sources.

Request 5:

Request No. 5 seeks "Documents comprising or relating to any communication between Microsoft and SAP regarding HANA or S/4HANA, including but not limited to any changes to Microsoft's or SAP's business practices or the business relationship

DECLARATION OF KOSTIS HATZITASKOS IN SUPPORT
OF TERADATA'S MOTION TO COMPEL DISCOVERY
FROM MICROSOFT -5

MISC NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

between SAP and Microsoft relating to HANA or S/4HANA or restrictions on the ability of users of S/4HANA to transfer, export, or copy data derived, created, or processed by S/4HANA into a Named Product."[2]  I understand that Teradata has limited this request to communication between Microsoft and SAP regarding restrictions on the ability of users of S/4HANA to transfer, export, or copy data derived, created, or processed by S/4HANA into a Microsoft product.  These restrictions imposed by SAP in recent years underlie Teradata's claims regarding anticompetitive conduct it alleges SAP has engaged in to stifle competition and gain a dominant position in the EDAW Products market.

The narrow set of documents requested will provide important and needed information on the impact of SAP's restrictions on Microsoft and its customers as well as their respective reactions to and assessments of those restrictions in the marketplace.  The requested information will show how a potential key competitor is grappling with those restrictions.  It is important to understand how Microsoft is discussing SAP's conduct with SAP, such as complaints from Microsoft about SAP's recently-adopted restrictions, as such discussions will provide key information on how SAP's conduct is affecting competition in the relevant antitrust markets.

Request 7:

Request No. 7 seeks "Documents comprising or relating to any communication between Microsoft and SAP, any other competitor, any customer, or any government authority concerning any restrictions or prohibitions imposed by SAP on exporting, extracting, or transferring data derived, created, or processed by any SAP ERP Applications for use with an EDAW Product not offered by SAP."  This request complements Request No. 5 in that it includes communications regarding the same narrow

---

[2] A "Named Product" is defined "Microsoft SQL Server, Microsoft SQL Server Analysis Services, Microsoft Commerce Server, and any other or prior versions of these products."  These are Microsoft EDAW Products, with which SAP ERP Products may interact.

DECLARATION OF KOSTIS HATZITASKOS IN SUPPORT
OF TERADATA'S MOTION TO COMPEL DISCOVERY
FROM MICROSOFT -6

MISC NO. ___

subject of SAP's recently-adopted licensing restrictions but goes beyond communications on that subject with just SAP.  It includes such communications with other competitors, customers, and any government authority (e.g., as part of a government investigation into SAP's conduct).  It is important to understand how Microsoft is discussing SAP's conduct with competitors, its customers, and regulators, as such discussions will provide key information on how SAP's conduct is affecting competition in the relevant antitrust markets.

Request 9:

Request No. 9 seeks "Documents sufficient to show the existence of any restrictions or prohibitions imposed by SAP on the ability of users of any SAP ERP Application to transfer, export, or extract data derived, created, or processed by such SAP ERP Applications for use or storage in a Named Product."  This request focuses on SAP's restrictions on using Microsoft's EDAW Products in conjunction with SAP's ERP Applications.  The requested documents are needed to identify and understand the specific restrictions SAP has imposed on Microsoft and its customers that are the subject of the communications requested in Request Nos. 5 and 7.  Again, the requested information is relevant to how SAP's restrictions affect customer product choice and competition for those customers by depriving them of their historical freedom to choose certain combinations of ERP Applications and EDAW Products.

6.      I have also been asked by counsel for Teradata to supervise research into publicly available information by my associates to determine the extent to which information sought by Teradata of Microsoft is available through public sources.  My staff and I searched Microsoft's website, industry third-party sources, and news articles.  Although public sources do include information relevant to economic analysis of Teradata's claims, the vast majority of the highly relevant information requested from Microsoft is not publicly available.

DECLARATION OF KOSTIS HATZITASKOS IN SUPPORT
OF TERADATA'S MOTION TO COMPEL DISCOVERY
FROM MICROSOFT -7

MISC NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

7.      We downloaded and reviewed Microsoft's annual reports (2010–2020) from Microsoft's investor webpage.  We concluded that the annual reports' discussions of performance, competition, products, and other issues relevant to our analysis are very general and failed to disclose much of the highly relevant information sought by the Requests.  For example, the reports do not break down revenues and costs by specific products or specific customers.  Instead, they generally report revenue by operating segments, comingling ERP revenue, for example, with Office revenue, LinkedIn revenue, customer relationship management revenue, and revenue for other products.  Other documents available on Microsoft's investor page and news releases also did not include the requested information.

8.      To gather information from industry third-party sources, we used search engines to find information from industry participants, including customers of ERP and EDAW products, analysts covering ERP and EDAW products, Microsoft's competitors, and employees involved with ERP and EDAW products.  We found that while these sources include information relevant to the economic analysis of Teradata's claims, they did not include the relevant information requested from Microsoft.  For example, analyst reports did not provide information by specific products or customers.  Abstracts of industry reports offered for sale indicate the reports did not include the requested information.  For example, they do not appear report information by specific products and customers.

9.      We also used search engines to find news stories related to competition between Microsoft and other ERP and EDAW vendors.  News stories generally discussed competition without clearly identifying a particular set of customers or products, or without providing information on the choices of specific customers.  A few news articles announced a new implementation of an ERP solution by a specific customer.  However, these articles lacked relevant information requested from Microsoft, for example the identity of the incumbent vendor, revenues, or whether a prior implementation was discontinued.

DECLARATION OF KOSTIS HATZITASKOS IN SUPPORT
OF TERADATA'S MOTION TO COMPEL DISCOVERY
FROM MICROSOFT -8

MISC NO. ___

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1       10.     Neither I nor any of my associates at Cornerstone Research assigned to the project

2  related to the above-captioned matter is a current, past, or anticipated employee of Teradata, SAP,

3  or any other ERP or EDAW competitor.  I am not aware of any employee of Cornerstone Research

4  that is currently, was in the past, or is anticipated to become an employee of Teradata, SAP, or any

5  other ERP or EDAW competitor.

6       I declare under penalty of perjury under the laws of the United States of America that the

7  foregoing is true and correct.

8       Executed this 27th day of August, 2020, at Chicago, Illinois.

10                               _____

                                 Kostis Hatzitaskos

DECLARATION OF KOSTIS HATZITASKOS IN SUPPORT
OF TERADATA'S MOTION TO COMPEL DISCOVERY
FROM MICROSOFT -9
MISC NO. \_\_\_

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001