Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TERADATA CORPORATION, TERADATA US, INC. and TERADATA OPERATIONS, INC.,<br><br>                      Plaintiffs,<br><br>    v.<br><br>SAP SE, SA AMERICA, INC., and SAP LABS, LLC,<br><br>                      Defendants. | No. 2:20-mc-00074-RSM<br><br>**THIRD-PARTY MICROSOFT CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY** |

RESPONSE TO MOT. TO COMPEL
(2:20-mc-00074-RSM)
4832-9038-6378v.12 0025936-003252

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I. INTRODUCTION

The Court should deny the Teradata plaintiffs' motion to compel, filed against third-party Microsoft, because it is premature, moot, and without merit. Microsoft's remaining production will be ready for service to Teradata on or before September 28. But Teradata's motion does not address Microsoft's forthcoming production or any of the issues Microsoft has worked diligently with Teradata to resolve. Instead, Teradata rushed to file this motion and now presents arguments that the parties never previously discussed and that will be mooted by Microsoft's supplemental production. When Microsoft warned Teradata of the problems with its motion, it was unmoved, refusing to withdraw its motion. The federal and local rules do not allow a party to simply skip over meet-and-confer requirements and this Court should not, either.

Teradata's motion fairs no better on the merits. Microsoft has worked diligently to collect and produce responsive documents—and has already produced thousands of pages—while also working with Teradata's counsel to understand and narrow Teradata's overly broad document requests. Microsoft's supplemental production will satisfy any remaining obligations under Rule 45. Microsoft therefore respectfully requests that the Court deny Teradata's motion to compel.

## II. FACTUAL BACKGROUND

### A. Teradata Waited More than a Year to Serve an Overly Broad Subpoena.

On June 19, 2018, Teradata filed a lawsuit against SAP in the Northern District of California, asserting various antitrust claims. *See* Case No. 3:18-CV-03670-WHO, ECF No. 1; Cross Decl. (ECF No. 1-1), Ex. 2. Teradata does not deny that it knew Microsoft was a competitor when it filed suit. *See* Mot. at 5. Indeed, Teradata's motion admits there are "[v]ery few" market participants and that SAP expressly identified Microsoft during discovery. *See* Mot. at 2-3, 5; Cross Decl., Ex. 3 at 13.

Teradata and SAP began discovery in December 2018. Case No. 3:18-CV-03670-WHO, ECF No. 74. On May 22 2020, more than a year later, and six months after SAP had expressly identified Microsoft in discovery, Teradata served Microsoft the subpoena at issue now. Cross

RESPONSE TO MOT. TO COMPEL
(2:20-mc-00074-RSM) - 1
4832-9038-6378v.12 0025936-003252

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Decl., Ex. 1 at 6. Teradata has provided no explanation for having waited over a year to seek discovery from Microsoft. Byer Decl. ¶ 16. Instead, Teradata's approach to third-party discovery began a needlessly contentious process, in which it refused to respond to Microsoft's questions, focus its document requests, or extend common courtesies while Microsoft and its counsel attempted to work around witness and attorney schedules in the midst of COVID-19 and summer vacations. Discovery in Teradata's lawsuit closes in January 2021. Byer Decl., Ex. 4 at 2. Teradata has identified no intermediate deadlines or need for expedition. *Id*. ¶ 7.

On June 19 and 25, the parties met and conferred to discuss Microsoft's timely-served objections to Teradata's document requests. Byer Decl. ¶ 2. Teradata explained that its subpoena had two sets of requests: requests that addressed Teradata's antitrust claims (Request Nos. 1-9), and requests that addressed its patent infringement defense (Request Nos. 10-11). *Id*. Teradata agreed to identify the versions of the Microsoft products relevant to the antitrust requests and to limit their 2011-to-present date range. *Id*. On July 9, 2020, Microsoft asked Teradata for a status update on Teradata's antitrust requests, and confirmed that Microsoft had completed its document collection for the patent requests. *Id*., Ex. 1.

On July 13, nearly a month after the parties' first meet and confer, Teradata identified the product versions at issue. It broadly identified 28 versions of one product and "all versions" of three others. But Teradata reneged on its promise to narrow the date range, insisting instead that Microsoft provide all responsive materials going back nearly ten years. Byer Decl., Ex. 2. Three days later, Microsoft received a subpoena from SAP, seeking material that largely overlapped with Teradata's request. *Id*. Microsoft informed Teradata that it intended to identify a search that would satisfy both subpoenas because it could not "run multiple searches for the same information." *Id*. Faced with two, uncoordinated but overlapping subpoenas, Microsoft began concurrently working with Teradata and SAP to locate material responsive to both subpoenas as quickly and efficiently as possible. *Id*. ¶ 4.

RESPONSE TO MOT. TO COMPEL
(2:20-mc-00074-RSM) - 2
4832-9038-6378v.12 0025936-003252

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### B. Microsoft Worked Diligently While Teradata Refused to Focus Its Requests.

Microsoft has worked diligently to investigate, collect, review, and produce documents responsive to Teradata's subpoena despite complications imposed by COVID-19 and summer schedules. Indeed, despite these challenges, Microsoft conducted approximately 17 interviews with Microsoft employees to assist in identifying and collecting thousands of pages of material, and has produced or is in the process of producing its responsive documents. Howard Decl. ¶ 5. Throughout this process, Microsoft stayed in constant communication with Teradata and repeatedly confirmed that Teradata had no case deadlines on the horizon. Byer Decl. ¶ 7.

In particular, Microsoft produced thousands of pages of documents in response to Request Nos. 10-11. Byer Decl. ¶ 8. These requests encompassed historic documents, no longer available in electronic form. Howard Decl. ¶ 6. Because of restrictions imposed by COVID-19, Microsoft was required to ship those materials for review at its outside counsel's out-of-state home. *Id*. ¶ 7. Microsoft has since made two and one-half bankers boxes of material available for Teradata's inspection, along with a set of documents produced electronically. Byer Decl., Ex. 5.

### C. Without Meeting and Conferring, Teradata Filed This Motion to Carry Out Its Threat to Use "Public Filings" to Damage Microsoft's Reputation.

Just four days after Teradata identified the products on which it sought discovery, Teradata claimed it could wait no longer and threatened to "seek relief from the court." Byer Decl., Ex. 3. When Microsoft asked whether Teradata had any impending deadlines justifying the need to "force[] Microsoft to run multiple, overlapping searches just weeks apart," Teradata identified nothing but the close of discovery in 2021. Cross Decl., Ex. 7 at 3-5. Microsoft also detailed its ongoing search, showing Microsoft's good faith in responding to the subpoena. *Id*. at 2-3. Teradata responded by claiming Microsoft's status report was "unhelpful and characteristic of the foot-dragging with which you've approached this from the beginning," and threatened to use "public filings in motion practice" to damage the reputation of Microsoft as a leading software company:

RESPONSE TO MOT. TO COMPEL
(2:20-mc-00074-RSM) - 3
4832-9038-6378v.12 0025936-003252

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

> It's also difficult to understand how one of the most sophisticated software companies in the world cannot efficiently and effectively search its own electronic documents internally as you claim. I imagine that will be quite the revelation in public filings in motion practice, and one that seems contrary to a reputation that Microsoft has cultivated over many years as a leading software company.

*Id.* at 2

On August 7, 2020, Microsoft provided Teradata another status report. Byer Decl., Ex. 5. Two weeks later, Teradata accused Microsoft of delay for having not checked in, only to later claim Teradata's outside counsel just found Microsoft's status report "in [his] spam box." Byer Decl., Ex. 6. Microsoft again asked Teradata to explain why it could not get from SAP the materials Teradata requested that Microsoft produce about SAP's communications and restrictions SAP imposes on its products. *Id.*, Ex. 7. Microsoft also stated that it "continue[s] to interview Microsoft employees who are searching for additional documents" and again asked Teradata to "let us know if you have any imminent case deadlines." *Id.*

Without responding to Microsoft's questions—and without meeting and conferring,—Teradata filed this motion. Byer Decl. ¶ 11. On September 4, 2020, Microsoft's outside counsel warned Teradata that the parties had never conducted the required meet and confer and requested Teradata withdraw its motion. Byer Decl. ¶ 13. It refused. *Id.*

### D. Microsoft Is Producing Documents Responsive to the Antitrust Requests.

Microsoft will complete its collection and review of documents in response to Teradata's antitrust requests on September 21, and on or before September 28 its documents will be available for production once the parties enter an appropriate protective order. Byer Decl. ¶ 12. On September 4, 2020, Microsoft described this upcoming production in detail to Teradata's counsel. *Id.* ¶ 13. Teradata has since identified no deficiencies with Microsoft's proposed supplemental production and, surprisingly, is avoiding even discussing Microsoft's upcoming production. *Id.*; see also Ex. 8 ("I understand you and Diana have discussed other aspects of your production. For this email, I'm just focusing on this one issue" related the format of Microsoft's production in response to Teradata's patent requests). Teradata's conduct means

RESPONSE TO MOT. TO COMPEL
(2:20-mc-00074-RSM) - 4
4832-9038-6378v.12 0025936-003252

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Microsoft has been required to file this response without having the benefit of first meeting and conferring with Teradata to understand what, if anything, Teradata believes remains at issue.

### III.    ARGUMENT

#### A.    Teradata Failed to Comply with Rule 37 and LCR 37.

Rule 37(a)(1) requires a party moving to compel discovery to include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Local Rule 37(a)(1) additionally requires the certification to "list the date, manner, and participants to the conference. If the movant fails to include such a certification, the court may deny the motion without addressing the merits of the dispute." These rules require the moving party to certify that the parties have (a) conducted "face-to-face or telephonic communications," (b) discussed any deficiencies perceived in the producing party's production, and (c) engaged in a full discussion of the parties' positions regarding particular document requests. *See Beasley v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 1268709, at *1 (W.D. Wash. Mar. 25, 2014) (denying motion to compel where plaintiff filed motion instead of responding to concerns raised by defendant because a "good faith effort to resolve discovery disputes requires an exchange of information until no additional progress is possible"). In other words, the certification must show that the parties made a "good faith effort to resolve discovery disputes" and must confirm that "no additional progress is possible." *Id*. Rushing to court without this certification is improper and a violation of the rules. *Id*.; *see also Flores v. US Immigration & Customs Enf't*, 2019 WL 1875371, at *1 (W.D. Wash. Apr. 26, 2019) (because parties were still in the process of responding to discovery requests, the parties failed to show they had met and conferred).

Teradata fails to certify that the parties reached an impasse on the issues Teradata now raises. Nor could it—Teradata never conducted a proper meet and confer. Although Teradata certifies that the "parties conferred" regarding Microsoft's initial objections to Teradata's requests "in June 2020," Teradata did not certify that the parties discussed Microsoft's intended production or the issues its motion to compel now raises. Instead, Teradata attempts to assert

RESPONSE TO MOT. TO COMPEL
(2:20-mc-00074-RSM) - 5
4832-9038-6378v.12 0025936-003252

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

that Microsoft's various status updates and assurances that it was still searching for responsive documents constitute a meet and confer. *See* Cross Decl. ¶¶ 3-5. They do not. They instead demonstrate Teradata's impatience for a production (despite being unable to identify any deadlines in the lawsuit before 2021), and its refusal to work cooperatively with Microsoft to narrow its overly broad requests, respond to Microsoft's questions, provide Microsoft a reasonable opportunity to search for documents, or accommodate scheduling challenges in light of COVID-19 and summer. Indeed, had Teradata met and conferred with Microsoft before filing this motion, as the rules require and as Microsoft's counsel explained after the motion was filed, it would have learned that Microsoft was in the process of finalizing its supplemental production. Byer Decl. ¶ 12. Because Teradata did not and cannot provide the required certification, the Court should deny this Motion.

### B. Teradata's Motion Fails on the Merits.

Even if Teradata could have met the certification requirement (and it could not), its motion would still fail because Microsoft's upcoming production satisfies its Rule 45 obligations. A party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). As a nonparty, Microsoft is entitled to greater protection from discovery burdens than a party to the underlying litigation. *See Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980); *Rollins v. Traylor Bros., Inc.*, 2017 WL 1756576, at *1 (W.D. Wash. May 5, 2017) ("[D]iscovery against a nonparty is more limited than the liberal discovery against parties."); *Kim v. NuVasive, Inc.*, 2011 WL 3844106, at *2 (S.D. Cal. Aug. 29, 2011) ("Non-parties deserve extra protection from the courts."). The "word nonparty serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery." *Dart*, 649 F.2d at 649 (quotation marks omitted).

#### 1. Request No. 1

Teradata's Request No. 1 demands that Microsoft produce all "[d]ocuments comprising or reflecting [Microsoft's] product roadmaps, promotional materials, product development plans,

RESPONSE TO MOT. TO COMPEL
(2:20-mc-00074-RSM) - 6
4832-9038-6378v.12 0025936-003252

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

and marketing plans for each of the ERP Applications or EDAW Products and related services that [Microsoft] offer[s]." Cross Decl., Ex. 1 at 15. Microsoft objected that, among other things, this is overbroad and unduly burdensome under Rule 45. *See id.*, Ex. 5 at 3-4. Although Teradata subsequently agreed "not to request product roadmaps or product development plans," it still demands promotional materials and marketing plans for each of the 28 versions of one product, and "all versions" of three additional products, from January 2011 through the present. *See* Mot. at 6-7; Byer Decl., Ex. 2. Requiring Microsoft to search its records for "all" marketing materials for this volume of products over a span of nine years, "including any hard copies or electronically stored information," would be time consuming and expensive, and would impose undue burden on a third-party, especially given the information sought is irrelevant. Cross Decl., Ex. 1 at 13; Howard Decl. ¶ 8.

Before this motion, Teradata's only explanation for the relevance of these documents was that Teradata wanted materials sufficient to show the time and resources Microsoft spent developing the identified products. *See* Byer Decl. ¶ 2. Teradata's motion does not explain how Microsoft's marketing materials and plans would show this. Instead, the motion presents an entirely new argument on which the parties have not meet and conferred. *See* Mot. at 7. Namely, Teradata now says these materials provide information on customers targeted by Microsoft, competitors of the product, and product features that are important to competition. *See* Kostis Decl. (ECF No. 1-2), ¶ 5. Even a basic search of Microsoft's publically available marketing materials shows they often lack the information Teradata seeks. *See* Byer Decl., Ex. 9. By failing to target its request to what Teradata claims is relevant, the request remains impermissibly broad and responding would inherently impose an undue burden. After all, "[t]he compulsion of production of irrelevant information is inherently an undue burden." *Dominguez v. Corp. of Gonzaga Univ. (Gonzaga Univ.)*, 2018 WL 3338181, at *1 (E.D. Wash. Apr. 19, 2018) (citing *Jimenez v. City of Chicago*, 733 F. Supp. 2d 1268, 1273 (W. D. Wash. 2010)).

RESPONSE TO MOT. TO COMPEL
(2:20-mc-00074-RSM) - 7
4832-9038-6378v.12 0025936-003252

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### 2. Request No. 2

Teradata's Request No. 2 demands that Microsoft produce all "[d]ocuments reflecting or concerning any assessment or evaluation of competition between or among Microsoft, Oracle, IBM, Teradata, and SAP for ERP Applications and/or EDAW Products and all data underlying or evaluated in such assessments or evaluations." *See* Cross Decl., Ex. 1 at 15. During the June 2020 meet and confers, Teradata explained that it sought Microsoft's competitive intelligence reports. *See* Byer Decl. ¶ 2. Microsoft conducted a reasonable search of its records and has the resulting reports available for production, subject to entry of a protective order. *Id*. ¶¶ 12-13. Although the parties have not meet and conferred regarding this production because of Teradata's refusal to do so, Microsoft believes its production of these reports moots this portion of the motion.

### 3. Request No. 3

Teradata's Request No. 3 demands that Microsoft produce all "[d]ocuments reflecting Microsoft's wins and losses of sales of ERP Applications and EDAW Products in competition with Oracle, IBM, Teradata, or SAP, including for each win and loss an identification of the product and supplier the customer switched away from and identification of the product and supplier it switched to." *See* Cross Decl., Ex. 1 at 15. During the June 2020 meet and confer, Teradata explained that this request seeks Microsoft's win-loss reports. *See* Byer Decl. ¶ 2. Microsoft conducted a reasonable search of its records and has the resulting reports available for production. Although the parties have not meet and conferred regarding this production, again because of Teradata's refusal to engage, Microsoft believes its production of these reports moots this portion of the motion.

### 4. Request No. 4

Teradata's Request No. 4 demands that Microsoft produce "[d]ocuments sufficient to identify [Microsoft's] top 100 customers by revenue for each of the ERP- and EDAW-based products or services [Microsoft] offer[s], the specific Microsoft ERP- or EDAW-based products or services that each such customer purchases, the amounts paid annually by each such customer

RESPONSE TO MOT. TO COMPEL
(2:20-mc-00074-RSM) - 8
4832-9038-6378v.12 0025936-003252

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

for each of those ERP- or EDAW-based products or services, and when each such customer began using and stopped using (for any that stopped) each of those ERP- or EDAW-based products or services." *See* Cross Decl., Ex. 1 at 15.  Microsoft objected to this request because, among other reasons, the request is overly broad and unduly burdensome given Microsoft is a nonparty.  *Id.*, Ex. 5 at 7-8.

Microsoft did, however, conduct a reasonable search and identified its top 10 customers for each product for each year that Teradata requested.  Howard Decl. ¶ 9.  Producing these documents requires creating reports that must be manually de-duped and checked for accuracy. *Id.*  Conducting an additional search for 90 smaller customers would significantly, and unnecessarily, increase the burden for Microsoft, as it would result in thousands of lines of data that would need to be manually reviewed, de-duped, and checked for errors.  *Id.*  This search would impose undue burden on a nonparty with little to no incremental relevance for Teradata, because the top customers would, inherently, include the largest customers in the market and therefore, will be captured by the top 10 customers Microsoft has offered to provide.  Teradata cites no evidence suggesting the relevance of Microsoft's smallest customers somehow outweighs the burden that searching for and producing that information would place on Microsoft, a third-party subject to the protections in Rule 45.  *See Arista Records v. Lime Grp.*, 2011 WL 679490, at *3 (W.D. Wash. Feb. 9, 2011) ("An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party.") (quotation marks omitted).  Indeed, because the parties have not meet and conferred (again, because of Teradata's refusal to do so), Microsoft has no reason to believe Teradata would refuse to accept Microsoft's forthcoming production.  As a result, Microsoft believes its upcoming production moots this part of the motion.

### 5. Request Nos. 5 and 7

Teradata's Request Nos. 5 and 7 demand that Microsoft produce all documents "relating to any communications" with SAP regarding two SAP products (*see* Request No. 5), and "relating to any communication" with SAP or others concerning any restrictions or prohibitions

RESPONSE TO MOT. TO COMPEL
(2:20-mc-00074-RSM) - 9
4832-9038-6378v.12 0025936-003252

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  imposed by SAP in connection with two other groups of products (*see* Request No. 7).  *See*
2  Cross Decl., Ex. 1 at 16.  Microsoft objected that, among other things, communications with
3  SAP were available from SAP—the defendant in this lawsuit—and forcing a non-party to
4  produce information that is available from a party is inherently unduly burdensome and
5  inappropriate.  *See Arista Records*, 2011 WL 679490, at *2 ("There is simply no reason to
6  burden nonparties when the documents sought are in possession of the party defendant.")
7  (quoting *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007)); *Moon v.
8  SCP Pool Corp.*, 232 F.R.D. 633, 637-38 (C.D. Cal. 2005) (documents pertaining to defendant
9  could more easily and inexpensively be obtained from defendant than non-party)).  During the
10  parties' June 2020 meet and confers, Teradata argued that the Northern District of California had
11  imposed "certain limitations on eDiscovery" in its lawsuit with SAP, so Teradata wanted to
12  obtain SAP's communications from Microsoft.  Byer Decl. ¶ 2.  Microsoft has since repeatedly
13  asked Teradata to identify any efforts it made to obtain those communications from SAP.
14  Teradata has never identified any such efforts.  *Id*.
15      In a new pivot, Teradata now claims the request seeks "Microsoft's own internal
16  communications concerning SAP's [allegedly] anticompetitive" behavior.  *See* Mot. at 10.  This
17  is not what the requests asks and conflicts with Teradata's expert's admission that "Teradata has
18  limited this request to communications between Microsoft and SAP."  To the extent Teradata
19  now argues the request actually covers ***Microsoft's communications*** concerning SAP's
20  communications and restrictions, Teradata provides no support for the relevance of those
21  communications.  Teradata's expert argues that "[i]t is important to understand how Microsoft is
22  discussing SAP's conduct ***with SAP***," not how Microsoft is discussing SAP's conduct internally.
23  *See* Kostis Decl. at 6 (emphasis added).  Further still, Teradata's latest interpretation of its own
24  requests remains fatally vague, overly broad, and unduly burdensome because Microsoft would
25  have no way to locate all emails somehow "related to" communications with SAP or restrictions
26  SAP places on its own software.  Courts routinely reject such requests, and this Court should do
27  so here, particularly given the increased protections that Rule 45 provides.  *See, e.g.*, *Cardenas v.*

RESPONSE TO MOT. TO COMPEL
(2:20-mc-00074-RSM) - 10
4832-9038-6378v.12 0025936-003252

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 623 (D. Kan. 2005) (requests for all documents "'relating to' . . . a general category or broad range of documents" is facially overbroad); *Woodmen of the World Life Ins. Soc'y v. U.S. Bank Nat'l Ass'n*, 2012 WL 1637246, at *13 (D. Neb. May 7, 2012) (a request "couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within its scope" is overbroad) (quotation marks omitted).

### 6. Request No. 9

Teradata's Request No. 9 demands that Microsoft produce all "[d]ocuments sufficient to show the existence of any restrictions or prohibitions imposed by SAP" on SAP's ERP Applications. *See* Cross Decl., Ex. 1 at 16. Teradata's motion incorrectly states that "Request No. 9 seeks documents *recognizing* restrictions SAP places on exporting data," and that this request "captur[es] other internal Microsoft documents recognizing the impact of SAP's licensing restrictions on Microsoft and its customers." *See* Mot. at 10-11 (emphasis added). Request 9 does not request Microsoft's *recognition* of any SAP restrictions; it simply asks for documents showing the existence of any restrictions. Teradata provides no explanation as to why it cannot obtain SAP's restrictions from SAP. *See Casterlow-Bey v. Trafford Publ'g*, 2017 WL 11358483, at *3 (W.D. Wash. Oct. 30, 2017); *Arista Records*, 2011 WL 679490, at *2. And even if this request could be construed to include internal Microsoft communications concerning SAP's restrictions, it fails for the same reasons described above.

### 7. Request Nos. 10 and 11

Although Teradata does not dispute that Microsoft's production satisfies Request Nos. 10 and 11, Teradata attempts to minimize the burden these requests already imposed on Microsoft by incorrectly stating Microsoft produced "a mere 22 pages." *See* Mot. at 1. Microsoft located thousands of pages of materials and made them available for inspection on August 7. Byer Decl., Ex. 5. Teradata's mischaracterization of Microsoft's efforts underscores the baseless nature of Teradata's motion.

RESPONSE TO MOT. TO COMPEL
(2:20-mc-00074-RSM) - 11
4832-9038-6378v.12 0025936-003252

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## IV. CONCLUSION

For the reasons stated above, Microsoft respectfully requests the court deny Teradata's Motion to Compel.

DATED this 14th day of September, 2020.

Davis Wright Tremaine LLP
Attorneys for Microsoft Corporation


By: *s/ Benjamin J. Byer*
    Benjamin J. Byer, WSBA #38206

920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: 206.622.3150
Fax: 206.757.7700
Email:    benbyer@dwt.com

RESPONSE TO MOT. TO COMPEL
(2:20-mc-00074-RSM) - 12
4832-9038-6378v.12 0025936-003252

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax