UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TERADATA CORPORATION, TERADATA US, INC., and TERADATA OPERATIONS, INC.<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>SAP SE, SAP AMERICA, INC., and SAP LABS, LLC,<br><br>　　　　　　　　　　Defendants. | MISC NO. 2:20-mc-00074-RSM<br><br>**PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM MICROSOFT CORPORATION**<br><br>**NOTE FOR MOTION CALENDAR:<br>January 8, 2021** |

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM MICROSOFT CORPORATION

MISC. NO. 2:20-mc-00074-RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:　(206) 676-7001

Pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure and Local Civil Rule 37(a)(1) of the Western District of Washington, Teradata Corporation ("Teradata") moves to compel Microsoft Corporation ("Microsoft") to produce documents responsive to Requests for Production Nos. 1-5, 7, and 9 of Teradata's Subpoena.  (Declaration of David Cross, Exhibit 1.)[1]

## I. INTRODUCTION

Seven months ago, on May 22, 2020, Teradata subpoenaed Microsoft for documents needed for antirust claims against SAP SE, SAP America, Inc., and SAP Labs, LLC (collectively, "SAP").  (Exhibit 1.)  After three months of negotiations *narrowing the requests*, Microsoft refused to produce any documents for many requests and made only vague (and broken) promises regarding the others.  Teradata was forced to file a motion to compel in this Court.  (Dkt. #1.)

In response to that motion, Microsoft claimed it would "complete its collection and review of documents in response to Teradata's antitrust requests" by September 21 and produce responsive documents by September 28, conditioned on entry of an adequate protective order. (Dkt. # 6 at 4.)  Relying on this representation, Teradata withdrew its motion.  But Microsoft used the protective order negotiations to stall its production for three more months.[2]  On December 10, it finally provided its "complete" response to Teradata's antitrust requests.  The paltry production is nowhere near what was expected.  It is significantly incomplete for three requests and contains no documents for the others.  In the parties' recent meet-and-confers, Microsoft still refuses to produce the documents Teradata needs.  Thus, the parties are at impasse.

SAP has engaged in anticompetitive conduct to stifle competition from Teradata and gain a monopoly position with respect to certain data analytics software both companies sell.  SAP claims that it is not, and could not become, a monopolist because of competition from Microsoft and other suppliers of products underlying Teradata's antitrust claims.  Teradata needs limited

---

[1] Hereafter, the exhibits to the Declaration of David Cross ("Cross Decl.") are referred to as "Exhibit __."  Teradata is not currently moving on Request Nos. 10 and 11 since Microsoft has agreed to comply with those requests.  Teradata also is not currently moving on Request Nos. 6 and 8.

[2] *See* Cross Decl., ¶¶ 9-12.

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM MICROSOFT CORPORATION - 1

MISC. NO. 2:20-MC-00074-RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

information from Microsoft to show that, while Microsoft is a leading supplier for a variety of products, it does not constrain SAP in the relevant antitrust market SAP seeks to monopolize.

With this motion, Teradata seeks to compel production of information responsive to only seven requests—namely, for specific promotional and marketing plans; competitive assessments regarding specific potential competitors; certain information about specific Microsoft customers; and certain documents, including communications with customers and internal to Microsoft, regarding specific anticompetitive licensing practices by SAP that are at the core of Teradata's antitrust claims. This type of information is routinely provided in discovery in antitrust cases, and Teradata cannot obtain it from other sources.[3] One court already has ordered the same discovery in this very case against a far more cooperative third-party competitor. (Exhibit 3.)

After months of delay, boilerplate objections, broken promises, and misleading claims bordering on bad faith, Microsoft has produced little for three of Teradata's antitrust requests and nothing for the others. After the parties' December 18 meet-and-confer, Microsoft had the audacity to threaten to seek fees from Teradata should it file this motion, remarkably arguing that the motion is "premature" after seven months of negotiations and persistent refusals from Microsoft. With fact discovery closing in the underlying action on February 26, 2021, the Court should order Microsoft to produce responsive documents immediately.

II.     BACKGROUND

   A.   **The Teradata-SAP Litigation**

Teradata is the plaintiff and counter-defendant in a lawsuit against SAP in the Northern District of California. (Exhibit 2.) Teradata seeks documents for its antitrust claims against SAP.

   B.   **The Relevant Teradata and SAP Products**

      i.   **ERP Applications**

SAP sells Enterprise Resource Planning ("ERP") Applications, which are business

---

[3] This motion is supported by the Declaration of Kostis Hatzitaskos (hereinafter "Hatzitaskos Decl.").

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM MICROSOFT CORPORATION - 2
MISC. NO. 2:20-MC-00074-RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

management software solutions that capture a variety of data, such as transactions, raw materials, production capacity, purchase orders, payroll, and customer relationships.  Very few providers offer integrated suites of ERP Applications that can meet the needs of large enterprise customers, because of the need to scale efficiently and handle the volume, diversity, and complexity of information produced and collected by those customers.  (Exhibit 2, ¶¶ 59-70.)  SAP has a dominant position among these few providers with its S/4HANA suite and legacy ERP Applications.  (Exhibit 2, ¶ 70.)  Switching between ERP providers is difficult, expensive, and risky, creating a "lock-in" effect that reinforces SAP's dominance.  (Exhibit 2, ¶¶ 65-69.)

ERP Applications are connected to underlying databases that hold the data collected and created by the applications.  These "transactional" databases are designed to efficiently and accurately collect and store information in real time in an organized fashion.  They are traditionally not designed to perform analytics, as doing so can lead to disruptions and inefficiencies in their transactional functions.  Instead, data from transactional databases have traditionally been replicated and transferred to specialized analytic databases. (Exhibit 2, ¶ 72.)

### ii. **EDAW Products**

Teradata provides enterprise data analytics and warehousing products ("EDAW Products").  Analytic databases range in size and capability, from "data marts" that are designed for a single business function, to EDAW Products designed for a wide range of disparate information.  EDAW Products are particularly important for large enterprises that collect a substantial amount of diverse information from sources such as ERP Applications.  These large companies rely on EDAW Products to efficiently harmonize, organize, store, and ultimately retrieve information that may be in different formats, languages, or currencies, or highly technical in nature.  (Exhibit 2, ¶ 75.)  These enterprises often have very large volumes of data that require EDAW Products to scale effectively.  Only a few companies have the ability to provide EDAW Products that can handle the complexity and scale required for large enterprises.  Teradata historically was a leading and innovative company in the EDAW Product market—but it has come

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM
MICROSOFT CORPORATION - 3
MISC. NO. 2:20-MC-00074-RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

under attack from SAP, which has engaged in anticompetitive conduct.

### C. SAP's Anticompetitive Conduct

Teradata's claims arise from SAP's efforts to use its dominant position in the ERP Applications market to pursue a dominant position in the EDAW Product market, in which it previously had no presence. In 2008, SAP, under what Teradata now knows to be false pretenses, entered into a joint venture to combine SAP's ERP Applications suite and Business Warehouse reporting tool with Teradata's industry-leading EDAW products. In fact, this was a ruse for SAP to steal Teradata's trade secrets and use them to develop a competing product: SAP HANA.

Customers have traditionally mixed EDAW Products with ERP Applications according to what best suited their needs—similar to using non-Microsoft software with its Windows operating system. (Exhibit 2, ¶¶ 80-81.) Teradata's success as a leading EDAW supplier has depended on this freedom of choice in the marketplace. SAP has attacked that freedom. (Exhibit 2, ¶ 83.)

SAP's first iteration of HANA had little success in the EDAW market. Low adoption rates and customer complaints highlighted HANA's deficiencies. (Exhibit 2, ¶¶ 86-87.) Unable to compete on the merits, SAP began coercing customers into using HANA, to the exclusion of Teradata and other third-party EDAW Products, by forcing ERP customers to adopt HANA in exchange for purchasing or merely upgrading SAP's ERP Applications—thus tying two distinct products together. (Exhibit 2, ¶¶ 89-91.) SAP announced that it will no longer upgrade previous ERP Applications and will sunset maintenance for previous iterations, thereby forcing its ERP customers to upgrade to S/4HANA and thus buy HANA. (Exhibit 2, ¶ 93.)

SAP also has begun significantly restricting competitors' ability to access customers' own data in SAP ERP Applications. This makes it costly, inefficient, or impossible for customers to move or replicate this data to a third-party database, such as Teradata, without breaching its license with SAP—something they previously had freedom to do with their own data. (Exhibit 2, ¶¶ 90, 95-98.) Instead, SAP requires customers to upgrade to a much more expensive version of HANA before allowing for efficient access. The combination of tying HANA to S/4HANA and

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM
MICROSOFT CORPORATION - 4
MISC. NO. 2:20-MC-00074-RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

implementing these restrictions makes it cost prohibitive to use a third-party EDAW Product.

SAP has deliberately sought to exploit its large ERP customer base to the detriment of those and other customers, by stifling competition from Teradata. Because SAP's ERP customers are effectively locked into using its ERP Applications, SAP is now attempting to leverage that substantial market power to lock them into using only HANA in the EDAW Product market.

### D. Microsoft's Role in the Relevant Markets

Microsoft provides both ERP Applications and EDAW Products. Its ERP Applications consist of a suite of products under the Microsoft Dynamics brand. Microsoft touts that it has "a large in house consulting team with over 400 years of experienced ERP Implementations." *See* https://abouttmc.com/erp-system/. SAP claims that Microsoft competes for ERP customers.

Microsoft also offers EDAW Products, most prominently Microsoft SQL Server and Microsoft Azure SQL Data Warehouse. Its EDAW Products often draw data from SAP ERP Applications, meaning Microsoft is directly affected by SAP's conduct. SAP contends that Microsoft's EDAW Products compete with SAP's HANA and Teradata's EDAW Products.

### E. Looming Discovery Deadlines

Fact discovery closes on January 15, 2021, in the underlying action, except that party depositions must be completed by February 12, 2021, and third-party discovery must be completed by February 26, 2021. Given SAP's reliance on Microsoft's role in the industry for its defense of Teradata's antitrust claims, Teradata needs discovery from Microsoft immediately, as it will affect further discovery from SAP and likely other third parties, such as customers.

### III. LEGAL STANDARD

"[D]iscovery in antitrust litigation is most broadly permitted and the burden or cost of providing the information sought is less weighty a consideration than in other cases." *New Park Ent. L.L.C. v. Elec. Factory Concerts, Inc.*, No. Civ. A. 98-775, 2000 WL 62315, at *3 (E.D. Pa. Jan. 13, 2000) (quoting *United States v. Int'l Bus. Mach. Corp.*, 66 F.R.D. 186, 189 (S.D.N.Y.1974)). *See also In re Aspartame Antitrust Litigation*, No. 2:06-ccv-1732-LDD, 2008

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM
MICROSOFT CORPORATION - 5
MISC. NO. 2:20-MC-00074-RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

WL 2275531, at *1 (E.D. Pa. May 13, 2008) (noting that the "broad scope of discovery 'has been held to be particularly appropriate in antitrust cases.'") (quoting *In re Intel Corp. Microprocessor Antitrust Litig.*, No. C19-1618RSM, 2007 WL 137152 at *5 (D. Del. Jan 12, 2007)).  Rule 45 subpoenas "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Robertson v. Cath. Cmty. Servs. of W. Wash.*, 2020 WL 3433143, at *2 (W.D. Wa. June 23, 2020) (applying Fed. R. Civ. P. 26(b)(1) standards to Rule 45 subpoenas).

Objections "must be specific—not []generalized, boilerplate…." *Jones v. Hernandez*, 322 F.R.D. 411, 413 (S.D. Cal. 2017) (citing *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for the Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005)).  *See also Brown v. Warner*, No. C09-1546RSM, 2015 WL 630926, at *4 (W.D. Wash. Feb. 12, 2015) (ordering production for failure to show request was "overbroad or unduly burdensome").  "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Id.* at *1 (quoting *Cable & Computer Tech., Inc. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997)).  *See also Opico v. Convergent Outsourcing, Inc.*, No. 2:18-cv-1579, 2019 WL 3067202, at * 2 (W.D. Wash. Jul. 12, 2019).

## IV.   ARGUMENT

Teradata seeks to compel documents responsive to seven of the requests in the subpoena, for which Microsoft has produced no documents at all or failed to make a meaningful production.

### A.   Request No. 1 (Promotional and Marketing Plans)

This request seeks promotional materials and marketing plans identifying whom Microsoft deems to be competitors in the relevant markets for ERP and EDAW products and how it positions its products against its primary competitors.[4]  Such documents are needed to define the relevant markets and to assess market power.  *See Todd v. Exxon Corp.*, 275 F.3d 191, 205 (2d

---

[4] Teradata agreed to limit this request by forgoing product roadmaps and development plans.  Cross Decl., ¶ 4.

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM MICROSOFT CORPORATION - 6
MISC. NO. 2:20-MC-00074-RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1 Cir. 2001) ("Industry recognition is well established as a factor that courts consider in defining a market.") They also provide important information as to which customers Microsoft targets its products and what product features are important for competition. (Hatzitaskos Decl., ¶ 5.) The U.S. Department of Justice ("DOJ"), Antitrust Division's model discovery requests for antitrust cases seek these same documents.[5] Chief Magistrate Judge Spero, the magistrate judge overseeing discovery in the underlying litigation, granted Teradata discovery from a similarly situated third party, Oracle, in response to a nearly identical request. (Exhibit 3 at 1.)

Microsoft has not produced any documents responsive to this request. Until the eve of this motion, it objected to the request with boilerplate objections to burden and scope. (Exhibit 4 at 3-4.) As Teradata was preparing to file this motion, Microsoft sent a letter suggesting that it would finally, after seven months, commence looking for responsive information. (Exhibit 10.) The Court should compel Microsoft to produce responsive documents without further delay.

**B. Request No. 2 (Competitive Assessments)**

This request seeks SAP's competitive assessments of the relevant markets for ERP and EDAW products. These documents provide important information about the relevant markets that is not available from Teradata's own files, SAP, or public sources. (Hatzitaskos Decl., ¶ 5.) SAP claims the relevant markets include many competing products, including Microsoft's products, such that SAP cannot possess monopoly power or pose a dangerous probability of obtaining monopoly power in either market. Microsoft's assessments of competition, including of its own competitive position, regarding the relevant products are needed to respond to SAP's defense. *See Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, No. 3:12-cv-26, 2013 WL 3872077, at *6 (S.D. Ohio July 25, 2013) (finding that "surveys, analyses, or studies…regarding competition" to be relevant to antitrust claims and ordering their production under Rule 45). For example, Microsoft's competitive assessments may identify a small set of products that pose

---

[5] *See* DOJ Model Requests, No. 17, available at https://www.justice.gov/atr/file/706636/download.

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM MICROSOFT CORPORATION - 7
MISC. NO. 2:20-MC-00074-RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

significant competition to its ERP and EDAW products.  Similarly, its documents may show that certain customers demand specific product offerings that a limited set of competitors can provide.  Economists routinely rely on such information for market definition and assessments of market power.  (Hatzitaskos Decl., ¶ 5.)  So does the DOJ.  DOJ Model Requests, No. 11.

To date, Microsoft has produced only *12* competitive assessments relating to ERP applications, and only for 2019 and 2020.  Microsoft did not produce any competitive assessments for EDAW Products.  Microsoft claims it performed a "reasonable search of its records" for "competitive intelligence reports."  (Dkt. # 6 at 8.)  It strains credulity that a company as sophisticated as Microsoft created only 12 competitive assessments for large software providers of major products in two markets over a ten-year period.  Teradata respectfully requests that Microsoft be compelled to conduct a robust search for responsive competitive assessments.

### C. Request No. 3 (Customer Switching)

Request No. 3 seeks documents showing how Microsoft has performed in competition with a limited set of potential ERP and EDAW competitors, particularly through information on Microsoft's wins and losses against those competitors.  Such win-loss information indicates how customers choose between the products of key competitors, and thus provides important information on the degree of substitutability between competing products and ultimately on market definition and market power.  (Hatzitaskos Decl., ¶ 5.)  Win-loss information from Microsoft will also provide information necessary to assess the extent to which ERP customers are locked in with their suppliers, an important aspect of Teradata's antitrust claims.

To date, Microsoft has produced only a small number of "win" reports, and only for 2019 and 2020.  Microsoft again claims that it "conducted a reasonable search of its records" for win-loss reports and remarkably located no records of any "losses" of any sales opportunities.  It has refused to explain this search or its narrow production.  It is common for a firm like Microsoft to track win-loss data in an electronic application from which it can be readily collected and produced.  (Hatzitaskos Decl., ¶ 5.)  In fact, Microsoft itself sells such an application, Microsoft

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM
MICROSOFT CORPORATION - 8
MISC. NO. 2:20-MC-00074-RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

Dynamics 365 CRM. Judge Spero ordered Oracle to produce responsive information from its customer relationship management system for a nearly identical request. (Exhibit 3 at 1.)

### D. Request No. 4 (Specific Customer Information)

Request No. 4 seeks limited information regarding Microsoft's top 100 ERP and EDAW customers by revenue, such as the product versions those customers are using. (Exhibit 1 at 15-16.) These requests seek important information on how customers choose among potential key competitors in the relevant markets. *See Amer Needle Inc. v. New Orleans*, No. 04 C 7806, 2012 WL 4327610, at *1 (N.D. Ill. Sept. 21, 2012) (granting motion to compel third party's license agreements and royalty and sales data as relevant to market definition and market power for antitrust case). This request also seeks information necessary to calculate market shares, which courts regularly consider for evaluating market power in antitrust cases. *See*, e.g., *Kerwin v. Cage Fury Fighting Championships*, No. 14-5159, 2015 WL 5092976, at *1 (E.D. Pa. Aug. 28, 2015) ("[r]equests calculated to discover agreements, restrictions on competition, defendants' market share, and the essential nature of casinos in the market are within the scope of discovery.") Courts have compelled non-parties to produce such information—and much more—in antitrust cases. *See*, e.g., *In re Androgel Antitrust Litig. (II) v. Unimed Pharms., LLC*, Nos. 1:09-MD-2084-TWT, 1:09-CV-956-TWT, 1:09-CV-957-TWT, 1:09-CV-958-TWT, 2012 WL 12895205 (N.D. Ga. Mar. 29, 2012) (compelling non-parties to produce "all purchase and sales data," "comparative analyses," and contracts with major customers). More generally courts regularly require companies to produce this type of data. *See Crocs, Inc. v. Effervescent, Inc.*, No. 06–cv–062017 2017 WL 3888502, at *3 (D. Colo. Feb. 8, 2017) ("[t]he Federal Rules of Civil Procedure clearly contemplate the production of information from dynamic databases"). *See also Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 656 (D. Kan. 2006) (ordering production from databases).

Microsoft has produced revenue data for only its top *10* customers for four product categories. This provides only a small fraction of the information requested by Teradata, which was already limited to reduce the burden on Microsoft. Furthermore, Microsoft produced data on

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM MICROSOFT CORPORATION - 9

MISC. NO. 2:20-MC-00074-RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

only the "enterprise edition" of its SQL Server product, without an explanation as to why data on the "standard edition" of the same product was not produced. This very narrow production provides far too little data for critical economic analysis. (Hatzitaskos Decl., ¶ 5.)

Microsoft responded to this request with a long list of unfounded objections. (Exhibit 4 at 6-8.) In response to Teradata's prior motion to compel, Microsoft claimed that "[c]onducting an additional search for 90 smaller customers would significantly, and unnecessarily, increase the burden for Microsoft, as it would result in thousands of lines of data that would need to be manually reviewed, de-duped, and checked for errors." (Dkt. #6 at 9.) But this contravenes Microsoft's publicly-touted capabilities, including its own software products that it claims allows customers to easily store and access just this type of data. It has not explained this inconsistency.

Microsoft also claims, without evidence, that its *top 100* customers, by revenue, include "Microsoft's smallest customers" and that the burden of searching for and producing their data outweighs their relevance. (Dkt. #6 at 9.) This directly contradicts publicly-available information indicating that Microsoft has *thousands* of customers for these products.[6] That its *top 100* customers are its "smallest" customer is simply not credible, nor has it shown this to be true.

### E. Request Nos. 5, 7, and 9

These requests seek documents concerning the anticompetitive conduct at the center of Teradata's claims: the restrictions SAP implements through its S/4HANA and HANA licensing practices. These restrictions unlawfully limit consumer choice by restricting the ability of SAP customers to transfer their own data between ERP Applications and EDAW Products. Microsoft has outright refused to produce any documents responsive to these requests, insisting that Teradata rely on documents available from SAP. (Exhibit 4.) But SAP obviously does not have Microsoft's own internal documents or customer communications. By letter dated December 23, 2020, seven months after Teradata's initial subpoena, Microsoft agreed to begin searching for

---

[6] *See*, e.g., Shan Rumale, Source Edge, "How Many Companies Use Microsoft Dynamics ERP?" March 7, 2019, available at https://www.sourceedge.com/sourceedge-blogs/how-many-companies-use-microsoft-dynamics-erp

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM
MICROSOFT CORPORATION - 10

MISC. NO. 2:20-MC-00074-RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

responsive documents.  Respectfully, after seven months of delay and inaction, Microsoft cannot be taken at its word, and certainly cannot be trusted to produce documents before discovery closes in the underlying action.

Request No. 5 seeks documents *related* to communications between Microsoft and SAP regarding SAP's restrictions.[7]  Teradata of course is obtaining what it can from SAP.  But this request includes *Microsoft's own internal communications* concerning SAP's anticompetitive licensing restrictions, which again are not available from SAP.  Such communications likely contain Microsoft's internal assessments of the impact of SAP's licensing restrictions on Microsoft and its customers.  SAP claims its products are innovative and that its licensing restrictions do not affect the competitive process.  Microsoft's documents likely will refute that claim given the harm SAP has caused in the marketplace.  Given the narrow, specific subject matter, these documents are unlikely to be voluminous or difficult to search for and produce.  Teradata has suggested three key custodians who are likely to have responsive documents and identified a group of specific products to focus on, thereby significantly reducing any burden on Microsoft. (Exhibit 6, July 3, 2020 email from Mary Kaiser to Ben Byer; July 13, 2020, email from Mary Kaiser to Ben Byer.)  Microsoft has rejected all compromises.

Request No. 9 seeks documents addressing restrictions SAP places on exporting data from SAP ERP Applications to Microsoft products.  This complements Request No. 5 by capturing other internal Microsoft documents recognizing the impact of SAP's licensing restrictions on Microsoft and its customers.  SAP obviously does not have these documents.

Request No. 7 seeks documents concerning communications with competitors, customers, and government authorities regarding SAP's licensing restrictions on HANA.  This includes, for example, complaints Microsoft received from *its customers* or communications it had with *its business partners* regarding SAP's restrictions.  Microsoft argues that Teradata can obtain these

---

[7] During negotiations, Teradata narrowed this request to forgo documents generally about SAP's relevant products and limit it to documents about SAP's licensing restrictions on a specific subset of products.

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM MICROSOFT CORPORATION - 11

MISC. NO. 2:20-MC-00074-RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

documents from SAP, but that makes no sense.  These documents are relevant to show SAP's harm to competition, which is key to Teradata's case against SAP.  *See Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, No. 3:12-cv-26, 2013 WL 3872077, at *5 (S.D. Ohio July 25, 2013) (finding a nonparty competitor's information relevant to the "marketwide impact of the challenged conduct on competition" in an antitrust case and ordering production of communications with others).  (*See also* Hatzitaskos Decl., ¶ 5.)  Judge Spero ordered Oracle to produce relevant files of the customer relationship managers of Oracle's top 25 customers by revenue since 2011 for three products in response to a nearly identical request.  (Exhibit 3 at 2.)

Microsoft has not produced any documents responsive to these three requests.  Instead, it asserted boilerplate, unsupported objections of overbreadth, ambiguity, and burden.[8]  (Exhibit 4 at 8-9, 11-12, 14-15.)  All three requests are specifically targeted at a single, narrow topic at the core of Teradata's antitrust claims and SAP's anticompetitive conduct:  specific SAP licensing restrictions.  Microsoft offers no legitimate reason for its refusal to produce any documents.

## V.   CONCLUSION

Teradata has tried to obtain from Microsoft a narrow set of materials that other nonparty competitors have voluntarily produced or another court already has ordered produced.  It has narrowed its requests, identified potential custodians, communicated with Microsoft countless times, amended the protective order, and withdrew its previous motion, all in hopes Microsoft would make a good faith production.  Instead, Microsoft has responded with delay, a meager production, an eleventh-hour offer to finally search for some documents responsive to some requests, and a threat to seek fees from Teradata merely for filing this motion, after *seven months of failed negotiations*.  Microsoft's threat is not well taken.  Discovery deadlines are fast approaching.  The Court should order Microsoft to produce responsive documents immediately.

---

[8] Microsoft purports not to understand common terms such as "changes to…business practices," "business relationship," "any customer," and "any competitor."  It is not credible that Microsoft does not understand what a customer or competitor is, including in the context of antitrust litigation, with which it has extensive experience.

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM MICROSOFT CORPORATION - 12

MISC. NO. 2:20-MC-00074-RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

# CERTIFICATION

Pursuant to L.C.R. 37(a)(1), the undersigned certifies that counsel for Teradata has in good faith conferred with counsel for Microsoft in attempts to resolve any disputes concerning the scope of the requests for production. Teradata has spoken to Microsoft's counsel on several occasions over the past seven months, including as recently as December 18, to come to an agreement on the scope of discovery, but the parties have been unable to reach an agreement. *See* Cross Decl. Because the parties' efforts to resolve these issues have been unavailing, Teradata now seek intervention by the Court.

DATED this 24th day of December, 2020.

Respectfully submitted,

SUMMIT LAW GROUP, PLLC

By *s/Diana Siri Breaux*
  Diana Siri Breaux, WSBA #46112
  315 Fifth Avenue S., Suite 1000
  Seattle, WA 98104
  Tel: (206) 676-7000
  Fax: (206) 676-7001
  dianab@summitlaw.com

MORRISON & FOERSTER LLP

By *s/David S. Cross*
  David D. Cross (*Admitted Pro Hac Vice*)
  2000 Pennsylvania Avenue NW, Suite 6000
  Washington, DC 2006-1888
  Tel: (202) 887-8795
  dcross@mofo.com

*Attorneys for Plaintiffs*

4852-6965-5509, v. 1

PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM MICROSOFT CORPORATION - 13

MISC. NO. 2:20-MC-00074-RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001