UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TERADATA CORPORATION, TERADATA US, INC., and TERADATA OPERATIONS, INC.<br><br>Plaintiffs,<br><br>v.<br><br>SAP SE, SAP AMERICA, INC., and SAP LABS, LLC,<br><br>Defendants. | Case No. 20-mc-0074 RSM<br><br>ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL<br><br>Underlying Action:<br>Case No. 3:18-cv-3670-WHO (N.D. Cal.) |

## I.     INTRODUCTION

This matter is before the Court by motion of Plaintiffs Teradata Corporation, Teradata U.S., Inc., and Teradata Operations, Inc. ("Teradata"). Dkt. #14. Teradata seeks to compel third-party Microsoft Corporation's ("Microsoft's") compliance with a subpoena Teradata served in its underlying antitrust action. *Id.* Microsoft primarily contends that the motion is premature because Teradata and Microsoft have not concluded the meet and confer process and continue to negotiate over the scope of the requests. Dkt. #17. Teradata replies that Microsoft merely seeks to delay its response beyond the eight months that have already passed and improperly relies on

ORDER – 1

"unsupported burden claims and purported search efforts that somehow yielded no responsive documents." Dkt. #19 at 2.[1] Having reviewed the matter, the Court grants Teradata's motion.

## II. BACKGROUND

Plaintiff Teradata is suing SAP SE, SAP America, Inc., and SAP Labs, LLC (the "SAP Defendants") for trade secret misappropriation, copyright infringement, Sherman Act violations, and Clayton Act violations. Dkt. #16 at 54–91. According to Teradata's complaint, SAP has historically focused on providing businesses Enterprise Resource Planning ("ERP") applications.[2] Teradata, on the other hand, has focused on providing businesses Enterprise Data Analytics and Warehousing ("EDAW") products, an area where it has found success.[3] Businesses often use ERP applications and EDAW products in tandem and Teradata's EDAW products have been able to access information stored in SAP's ERP applications.

More recently, SAP has expanded into the EDAW market. To infiltrate the new market, Teradata alleges that SAP partnered with it under false pretenses to gain access to Teradata's "massively parallel processing" architecture—developed during Teradata's decades of experience in the EDAW market—to rapidly develop SAP HANA, an EDAW product. Teradata alleges that SAP is driving sales of SAP HANA by forcing its essentially "locked-in"[4] ERP

---

[1] Throughout, the Court cites to the docket and page numbers applied by the Court's CM/ECF system. Where appropriate, the Court cites to numbered paragraphs or page and line numbers.

[2] "ERP [a]pplications allow companies to gather and manage the data required to conduct their day-to-day operations across many aspects of the business enterprise, including sales and inventory transactions, financial and accounting transactions, human-resource transactions, and the like." Dkt. #16 at 63, ¶ 30.

[3] "EDAW involves the centralized storage and integration of vast amounts of data collected from numerous sources across an entire business enterprise in its day-to-day operations, giving the business a complete 'enterprise view' of its operational activities." Dkt. #16 at 58, ¶ 16.

[4] Teradata alleges that, for most customers, the costs associated with switching to a new ERP application provider are prohibitive and that customers are therefore locked-in with SAP.

ORDER – 2

customers to switch to SAP HANA in exchange for critically important updates to SAP's ERP applications. At the same time, Teradata alleges that SAP is making it more difficult for Teradata's EDAW products to integrate with SAP's ERP applications, further expanding SAP's capture of EDAW customers for its HANA EDAW product.

Microsoft is a not a party to Teradata's underlying antitrust action. But Microsoft is relevant to the underlying dispute because it is a player in both the ERP and EDAW markets. Dkt. #14 at 6. SAP defends against Teradata's lawsuit, at least in part, on the basis that Microsoft and other companies directly compete with it in both the ERP and EDAW markets. To adequately address this issue, Teradata is seeking "limited information[5] from Microsoft to show that, while Microsoft is a leading supplier for a variety of products, it does not constrain SAP in the relevant antitrust market SAP seeks to monopolize." *Id.* at 2–3.

Teradata served Microsoft with a subpoena on May 22, 2020. Dkt. #16 at 15–26. After three months of preliminary negotiations, Teradata felt it had to file a motion to compel Microsoft's compliance. Dkt. #1. Microsoft responded, arguing that Teradata's motion was premature and that it was prepared to produce documents at the end of September, pending entry of an adequate protective order. Dkt. #6. As a result, Teradata withdrew its motion to compel, without prejudice to refiling. Dkt. #11. Microsoft's production did not occur as anticipated, however, as the parties continued to negotiate an adequate protective order. A protective order was finally entered on December 9, 2020, and Microsoft promptly produced responses to the subpoena the next day. Dkt. #17 at 4. The production did not meet with Teradata's expectation—

---

[5] Generally speaking, Teradata seeks "specific promotional and marketing plans; competitive assessments regarding specific potential competitors, certain information about specific Microsoft customers; and certain documents, including communications with customers and internal to Microsoft, regarding specific anticompetitive licensing practices by SAP that are at the core of Teradata's antitrust claims." Dkt. #14 at 3.

ORDER – 3

Teradata characterizes the production as "paltry . . . [and] nowhere near what was expected"—and after the parties met and conferred, Teradata again felt compelled to file a motion to compel Microsoft's compliance. Dkt. #14 at 2.

### III. DISCUSSION

#### A. Legal Standard

Attorneys issuing subpoenas have a duty to "avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). Additionally, subpoenas are subject to the scope of allowable discovery under Federal Rule of Civil Procedure 26. That rule provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). "Information within the scope of discovery need not be admissible in evidence to be discoverable." *Id.* The Rule makes clear that "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." FED. R. CIV. P. 26, Advis. Comm. Notes for 2015 Amends. Even where evidence is relevant and proportional, the Court may limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i).

#### B. Meet and Confer

Microsoft again takes the position that Teradata's motion is premature as the parties were continuing to meet and confer as required by this Court's local rules. Dkt. #17 at 4–7; *see also* Local Rules W.D. Wash. LCR 37(a)(1) (requiring that parties meet and confer in good faith prior to filing a motion to compel). But the Court does not find that Teradata failed to meet and confer in good faith prior to filing this motion. Teradata included the necessary certification that its counsel "has in good faith conferred with counsel for Microsoft in attempts to resolve

ORDER – 4

1  [outstanding disputes] . . . . as recently as December 18, . . . but the parties have been unable to

2  reach an agreement." Dkt. #14 at 14. This certification is supported by the record and, by its

3  terms, satisfies the Court's local rule in this circumstance. Microsoft does not argue that Teradata

4  "willfully refused to confer, failed to confer in good faith, or failed to respond on a timely basis

5  to a request to confer." Local Rules W.D. Wash. LCR 37(a)(1). Teradata's motion complies

6  with this Court's local rules and is not premature.

**C. Teradata's Request No. 1**

> Documents comprising or reflecting Your product roadmaps, promotional materials, product development plans, and marketing plans for each of the ERP Applications or EDAW Products and related services that You offer.

Teradata represents that this request seeks Microsoft's promotional materials and marketing plans to better understand which companies Microsoft regards as its competitors in the ERP and EDAW markets and how Microsoft markets against its competitors.[6] Dkt. #14 at 7. Teradata indicates that a request such as this is common in antitrust litigation and is included in the U.S. Department of Justice's model discovery requests for antitrust cases. *Id.* at 8. Nevertheless, Microsoft's December 10, 2020, production did not appear to include records responsive to this request. Dkt. #16 at 16.

Microsoft has abandoned its initial objection on relevance grounds and now asserts only that the request imposes an undue burden on it. *Compare* Dkt. #6 at 7–8 *with* Dkt. #17 at 8. But the Court finds Microsoft's undue burden argument overly simplistic. Microsoft relies only on the declaration of a paralegal indicating that the request applies to "marketing materials and plans for 28 versions of one product and 'all versions' of three other products, over a span of nine years, [and] would be time consuming, expensive, and impossible to do without undue burden."

---

[6] Teradata has since dropped its request for product roadmaps and development plans. Dkt. #14 at 7 n.4.

ORDER – 5

Dkt. #7 at ¶ 8. But the assertion is conclusory, and Microsoft makes no effort to quantify the burden imposed on it or to argue that the burden is disproportionate to the needs of Teradata's case. Microsoft itself recognizes that its compliance requires more, indicating that it continues working "to determine what documents [it] can provide efficiently that would be responsive and relevant." Dkt. #16 at 176. The time for investigation and negotiations has passed and Microsoft, having failed to make persuasive arguments to the contrary, must produce responsive records.

**D. Teradata's Requests No. 2 and 3**

> [Request No. 2:]   Documents reflecting or concerning any assessment or evaluation of competition between or among Microsoft, Oracle, IBM, Teradata, and SAP for ERP Applications and/or EDAW Products and all data underlying or evaluated in such assessments or evaluations.
>
> [Request No. 3:]   Documents reflecting Microsoft's wins and losses of sales of ERP Applications and EDAW Products in competition with Oracle, IBM, Teradata, or SAP, including for each win and loss an identification of the product and supplier the customer switched away from and identification of the product and supplier it switched to.

Requests number two and three seek to understand "Microsoft's assessments of competition, including [Microsoft's] own competitive position, regarding the relevant products," what customers are looking for, and the "degree of substitutability between competing products" within the relevant markets. Dkt. #14 at 8–9. Microsoft does not contest the relevancy of the requests. Rather, Microsoft indicates that both categories of records are maintained in "central repositor[ies],"[7] and that it produced relevant records from the repositories. Dkt. #16 at 165; Dkt. #17 at 8–9.

Conversely, Teradata complains that Microsoft's production included "only *12* competitive assessments relating to ERP applications, and only for 2019 and 2020," only

---

[7] The record does not make clear whether there are separate repositories or whether both categories of documents are maintained in a single repository. Dkt. #16 at 165.

ORDER – 6

included win reports from 2019 and 2020, and did not include any "loss" reports. Dkt. #14 at 9, 10. (emphasis in original). After Teradata objected to Microsoft's December 10, 2020 production, Microsoft represents that it conducted additional searching but did not locate additional responsive documents. Dkt. #17 at 9. But Teradata argues that Microsoft's description of its search is overly vague. Dkt. #19 at 5–6. The Court agrees.[8]

Teradata reasonably anticipated that a sophisticated company like Microsoft likely possessed more than 12 competitive assessments and more information on the successes and failures of its sales campaigns. Microsoft does not represent to the Court that it is unlikely to have additional responsive records, only that it did not find additional responsive records in whatever search it has conducted to this point. Without more, Microsoft does not satisfy its burden to demonstrate that additional searching and production would be disproportionate to the needs of the case. Microsoft must adequately respond to the subpoena.

**E. Teradata's Request No. 4**

The parties have come to an agreement in relation to Teradata's fourth request and Teradata has withdrawn its request for relief. Dkt. #19 at 6.

**F. Teradata's Requests No. 5, 7, and 9**

> [Request No. 5:] Documents comprising or relating to any communication between Microsoft and SAP regarding HANA or S/4HANA, including but not limited to any changes to Microsoft's or SAP's business practices or the business relationship between SAP and Microsoft relating to HANA or S/4HANA or restrictions on the ability of users of S/4HANA to transfer, export, or copy data derived, created, or processed by S/4HANA into a Named Product.
>
> [Request No. 7:] Documents comprising or relating to any communication between Microsoft and SAP, any other competitor, any customer, or any government authority concerning any restrictions or prohibitions imposed by SAP

---

[8] Perhaps tellingly, while Microsoft asserted that it had fully responded to the requests, it readily agreed to "continue[] to investigate whether it has fully responded to requests 2 and 3, and whether it can reasonably locate responsive documents in response to the remaining requests Teradata recently raised." Dkt. #18 at ¶ 6.

ORDER – 7

>on exporting, extracting, or transferring data derived, created, or processed by any SAP ERP Applications for use with an EDAW Product not offered by SAP.
>
>[Request No. 9:]  Documents sufficient to show the existence of any restrictions or prohibitions imposed by SAP on the ability of users of any SAP ERP Application to transfer, export, or extract data derived, created, or processed by such SAP ERP Applications for use or storage in a Named Product.

The existing disputes over requests five, seven, and nine are largely obscured by the parties' disparate interpretations of the record.  Teradata's first motion to compel similarly sought to compel the production of records within the scope of these requests.  Dkt. #1 at 11–12.  Microsoft objected on the basis of both relevance and the scope of the requests and argued that responsive records should be obtained from SAP.[9]  Dkt. #6.  Perhaps believing that Microsoft would nevertheless produce documents responsive to the requests—as Microsoft apparently intended to do for the other disputed requests—, Teradata withdrew its first motion.  Dkt. #11.  But Microsoft treated Teradata's withdrawal as a concession and does not indicate that it conducted any searches related to these requests or produced any responsive documents.

The parties' dispute lay dormant until Microsoft actually produced responsive records on December 10, 2020, after an adequate protective order was entered.  At that time, Teradata recognized that Microsoft had not produced any records in response to these requests, and promptly raised the issue with Microsoft.  Dkt. #16 at 168.  For its part, Microsoft concedes that it likely has materials responsive to requests five and seven and indicated that it would conduct additional searching with further responses to come in early January 2021.  *Id.* at 177–78.  Similarly, and after its December 10, 2020 production, Microsoft has conducted "searches for documents sufficient to show any interoperability of SAP's products with Microsoft's ERP products" and represented that it would be producing responsive documents on December 31,

---

[9] Microsoft read the requests to apply only to communications between Microsoft and SAP.

ORDER – 8

2020." Dkt. #18 at ¶ 12. However, the parties have not updated the Court on these searches, the records produced, or the need for the Court's intervention.

Despite the ambiguity, the bigger picture cuts against Microsoft. Microsoft has acknowledged that it must do more to fully respond to Teradata's subpoena. *See* Dkt. #17 at 2 (Microsoft acknowledging that it "is currently conducting and has conducted reasonable searches for ***and*** has produced and is currently producing responsive material") (emphasis in original); Dkt. #18 at ¶ 6 (Microsoft indicating that it "has continued to investigate whether it has fully responded to requests 2 and 3, and whether it can reasonably locate responsive documents in response to requests 1, 4–7, and 9"). At the same time, the subpoena has now been outstanding for more than eight months. Microsoft does not argue that any of the requests seek wholly irrelevant records, recognizes that further response is necessary, and does not argue that the burdens are disproportionate to the needs of the case. Microsoft must fully respond.[10]

## IV.    CONCLUSION

Accordingly, and having considered Teradata's motion to compel, the briefing of the parties, and the remainder of the record, the Court hereby finds and ORDERS that Plaintiffs' Motion to Compel Discovery from Microsoft Corporation (Dkt. #14) is GRANTED. No later than seven (7) days from the date of this Order, Microsoft Corporation shall produce all documents responsive to Teradata's subpoena.

//

//

//

---

[10] The Court does not mean to imply that the requests are free of all ambiguity or that the parties do not need to compromise further to draw a careful balance between Teradata's needs and the burdens imposed on Microsoft. The record reveals that all involved could have worked harder to assure that this matter was timely resolved short of judicial intervention.

ORDER – 9

Dated this 8th day of February, 2021.

_____
RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 10